EPHRAIM STETSON *vs.* E. CARVER COMPANY.

The owners of a mill-dam and water privilege, who have a right, which they have not exceeded, to maintain their dam at a certain height, are not liable to an owner of land bordering on the stream at a point above a highway which crosses the mill-pond above their dam, for flowing caused by the act of a lessee of their grantor, several years before the conveyance to them, in changing the location of the highway, and stopping up the sluiceway which conducted the water of the stream under it, and substituting another sluiceway of smaller capacity in a different place, although a vote of the town accepting the highway as changed provided that their grantor should keep the new sluiceway in good repair.

COMPLAINT under the mill-act, Gen. Sts. *c.* 149, for flowing the complainant's cranberry meadow situated on Herring Brook in Halifax. The case came before this court on appeal from the superior court, where it was submitted to referees, by whose report it appeared that ever since 1849 the respondents have owned a mill-dam and water privilege on Herring Brook, known as the Old Furnace Dam, and possessed the right to maintain the dam at a certain height, which they had not exceeded; that prior to 1841 the mill-pond was crossed at a point about seventy-five rods above the dam by an ancient highway which ran over a bridge, through which was a sluiceway; that in 1841, two brothers Morey, who were then owners of the mill property, built a temporary dam across the sluiceway, to hold off the water while repairing their mill; that on removing this temporary dam the current undermined the abutment of the bridge, and

rendered it unsafe for travel, so that its place was supplied by a temporary structure; that in 1843 the Moreys ceased to be owners of the mill property, and in 1846, they, being then lessees thereof under parties through whom the respondents derive title, built a new bridge and sluiceway across the pond, two rods above the old one, and filled up the old sluiceway with sand; that this new sluiceway was not placed in the channel of the brook, and had only three eighths of the capacity of the old one for conducting and venting water; and that, by reason of this change, the water above the bridge and sluiceway had often been kept at a higher level than the water below, and the complainant's cranberry meadow, at times within three years prior to his complaint, was overflowed and damaged as therein alleged; that the new bridge and sluiceway remain in the same condition as when built by the brothers Morey; that since the respondents owned the mill property, they once used the new bridge and sluiceway for a stop-water while repairing their mill, but at a season of the year when no perceptible flowing upon the complainant's meadow was caused thereby; and that in 1848 the town of Halifax voted to accept the road across the pond as then built, but with the proviso that the Halifax Manufacturing Company, which was then the owner of the respondents' mill property, should " keep the sluice of stop-water in good repair." All questions of law arising on these facts were reserved for the decision of the court, which entered the judgment thereon for the respondents, from which the complainant appealed.

*P. Simmons,* for the complainant. By the Gen. Sts. *c.* 149, § 29, when the owner or occupant of a mill or dam makes any material change by raising the dam, or altering the machinery or " the manner of using the water," so as to cause additional damage to the land of another, it shall be considered as a new mill or dam in respect to such additional damage and the remedy. The complainant does not contend that the respondents have raised the dam at their mills, but that the occupants of their mills within twenty years have made a material change in the manner of using the water, by which change only three eighths

of the former and natural flow of the stream passes through the sluiceway at the bridge, whereby his land has been overflowed · that it makes no difference at what point on the stream the obstruction is placed, so long as the respondents have adopted a new mode of using the water in conformity with it; and that under the Gen. Sts. *c.* 149, § 29, the respondents are just as liable for the flowing as if the old sluiceway had been filled up and their dam and the new sluiceway had been built at the same time by their grantors. The vote of the town does not exempt the respondents from liability, for it only accepted the road and left the matter of the sluiceway to the respondents. And even if the town is liable, that does not relieve the respondents from liability also. *Lawrence* v. *Fairhaven,* 5 Gray, 111–120.

*E. Ames & W. Latham,* for the respondents, were not called upon.

CHAPMAN, J. The respondents do not flow the complainant's land by means of the dam which they use to raise a head of water to work their mill. It is flowed by means of the obstruction created by the Moreys in 1846 when they changed the sluiceway above the respondents' mill-pond. It does not appear that the respondents are under any obligation to enlarge this sluiceway, or remove the obstruction created by the Moreys. The respondents once stopped the sluiceway, since they took possession of their mill, so as to keep back the water temporarily while they were making repairs; but it was at a time when the stoppage did not damage the complainant, and of course that act is not sufficient to sustain this complaint. As this is all they have done, the judgment for the respondents must be affirmed.