## Henry Miller et al.

### vs.

### Otto Troost et al.

*Chapter* 31 *of the Gen. Statutes*, relating to " Dams and Mills " is constitutional.

Whenever an owner on a stream has to any extent, made improvements in his power, with the *bona fide* intention to turn it to use, his power is " a water power previously improved " within *Sec.* 16 of the chapter, so that a lower proprietor cannot afterwards acquire the right to impair his power by proceedings under the statute.

The right to be acquired under the statute, dates from the time of commencing the proceedings, and is governed by the condition of the upper proprietor's power at that date.

The defendants in this case appeal from a judgment of the District Court for Winona county, entered against them, upon the findings of the court, before whom the case was tried without a jury. A sufficient statement of the case will be found in the opinion of the court.

vol. xiv.—24

MITCHELL & YALE for Appellants.

BERRY & WATERMAN for Respondents.

*By the Court*—GILFILLAN, Ch. J.—This is a controversy between the upper and lower proprietors upon the Rolling-stone Creek, in the county of Winona, involving the right of the latter, the defendants, to proceed under chapter 31 of the General Statutes, to obtain the right to maintain a dam on their premises, at such a height as to set the water back upon that part of the creek running through the premises of the former, the plaintiffs. The grantor of the plaintiffs, as early as 1863, commenced operations for the erection on his premises, of a dam for the purpose of a flouring mill, which operations were continued from time to time, by him and by plaintiffs after they acquired his title, down to March 8, 1867; which operations consisted in making the necessary surveys to locate the mill and dam, and ascertain the head of water that could be obtained, the making of contracts and procuring material for the erection of the mill and dam, the excavating for and laying a stone wall intended to be for the foundation of the mill, and to form part of the dam, and excavating for a tail race, the whole amount so expended prior to March 8, 1867, being, as found by the court below, $8500. The defendant Troost, in the summer of 1866, erected on his premises, a flouring mill, which was completed about the 1st January, 1867, at an expense of $30,000, and constructed a dam at first two feet two inches high, and raised it in February, 1867, to the height of two feet eleven inches. This dam sets back the water, at its ordinary stage, so as to raise it above its ordinary level, at the place where plaintiffs have located their

Miller et al. v. Troost et al.

dam, one foot and eight inches, causing a permanent injury to them.   Troost in February, 1867, obtained the appointment of commissioners under chapter 31, General Statutes, to obtain the right to maintain his dam at its present height. Notice of the appointment and of the meeting of the Commissioners, was served on plaintiffs March 8th, 1867.   This action was brought to compel Troost to abate so much of his dam as sets back the water so as to interfere with plaintiff's water power, and to restrain the commissioners from proceeding to assess the damages, and judgment to that effect was rendered in the court below.

The case presents two questions :

*First.*—Whether chapter 31 of the General Statutes, entitled " dams and mills " is in conflict with the Constitution.

*Second.*—Whether plaintiff's was a " water power previously improved," within section 16 of the chapter.

The object of the statute is to provide a means by which the full power existing in streams, not navigable, may be made available to drive machinery ; and for that purpose it purports to enable one proprietor on such a stream, erecting a mill dam on his own premises, to appropriate, upon making compensation, to some extent the property of another, either by flowage of his land, or by setting back the water so as to interfere with his use of the stream.

The legislature cannot take the property of one and confer it on another for a merely private use.   Wherever the power of appropriation is attempted to be exercised, the test of its validity is, whether the use to which it is appropriated is a " public use " within the meaning of the Constitution.   Many, if not most of the States, have statutes relating to mills and mill dams, with provisions substantially similar to those of chapter 31.   It is difficult to reconcile these statutes, upon principle, with the constitutional rights

of the citizen. The property in such cases is not taken into possession and use by the public in its corporate capacity to be devoted to some purpose supposed to be for the general good; nor (unless the mills when established are to be deemed public mills, and required to subserve directly the convenience of the neighborhood, by doing the work which the inhabitants may have for them to do,) do the individuals composing the public, derive any direct use, profit, or convenience from them; nor is the public either collectively or individually benefitted by them, except in so far as the public, and every member of it, is incidentally benefitted by those enterprises which reduce the powers of nature to the service of man. Of the benefit to the public from such enterprises, the court in *Olmstead vs. Camp*, 33 *Conn.*, 532, says: " It would be difficult to conceive a greater public benefit, than garnering up the waste waters of innumerable streams, and rivers, and ponds, and lakes, and compelling them with a gigantic energy to turn machinery, and drive mills, and thereby build up cities and villages, and extend the business, the wealth, the population, and the prosperity of the State." But these benefits, though great, are merely incidental, and such as flow to a greater or less degree, from all great industries, and would not alone justify the appropriation of private property to secure them. Because in some cases the nature of the property is such that these benefits to the public cannot be secured without the exercise of the power to appropriate private property, it is thought that in such cases, devoting it to such purposes may be regarded as taking it for public use. Ch. J. Shaw, in *Fiske vs. Framingham Manuf. Co.*, 12 *Pick.*, 68, speaking of mill dam laws, says: " We think they will be found to rest for their justification, partly upon the interest which the community at large has in the use and employment of mills,

and partly upon the nature of the property, which is often so situated that it could not be beneficially used without the aid of this power." It is true that the incidental benefit to the public from turning to use all the power in running streams, may be very great, and that, such is the nature of property in and along these streams, the power cannot be made fully available without such a law as that we are considering; but to say the least, such a law goes to the extreme limit of legislative power, and had not similar laws, in States having constitutional restraints similar to ours, been uniformly sustained by the courts, we should hesitate long before upholding this one. The decisions, however, are so numerous, and by courts of so great authority, that we are constrained to hold the law to be constitutional.

Upon the second point we have no doubt. *Sec* 16 reads : " No mill dam shall be erected or maintained under the provisions of this chapter, to the injury of any water power previously improved. " Upon this section the defendants contend that " until a dam is built and the water is so applied as to be capable of moving machinery, there is no improved water power." That interpretation would permit the lower proprietors to wait until the upper proprietor had expended large sums in the improvement of his power, and then, just as he was about to complete it, so as to be capable of moving machinery, to commence proceedings under the statute, and acquire the right to entirely submerge, and obliterate his power, and destroy all the results of his expenditures. That would be so manifestly unjust, that it is impossible to hold from the language used, that the legislature intended any such thing. No such intention would be necessary to accomplish the general object of the chapter, the full development of the power in these streams. If the upper proprietor will make his power available, there is no reason

which the public are interested in, why the lower proprietor should be permitted to take it. Whenever an owner has to any extent made any improvement in his power, with the *bona fide* intention to turn it to use, he comes within the exception made by section 16. The fact of a dam having been erected by the party taking proceedings, before any proceedings had under the statute, does not affect the right to take those proceedings; but the right to maintain the dam dates from the proceedings had, and is governed by the condition of the upper proprietor's power at the date of commencing them, that is of serving the notice.

On the trial there were a great many exceptions taken to rulings on the admissibility of evidence, but they were all taken upon an erroneous theory of the case, and the rulings of the court were proper.

Judgment is affirmed.