JOHN F. ROURKE *vs.* CENTRAL MASSACHUSETTS ELECTRIC COMPANY.

Hampden.    September 25, 1900. — October 18, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Mill Act — Damages — Evidence.*

It is a proper mode of estimating damages, on a complaint under the mill act, Pub. Sts. c. 190, to ascertain how much less the entire tract was worth by reason of the flowing or taking of a part.

COMPLAINT, for flowing lands under the mill act, Pub. Sts. c. 190. At the trial in the Superior Court, before *Dewey,* J., it appeared that the land of the plaintiff, including that damaged by percolation, consisted of from three to five acres (the evidence varying as to the precise amount), which was part of a tract of land lying between a highway on the south, from which the land was reached, and the bank of the river upon which the dam supporting the flashboards was erected on the north, containing some ten acres in addition to the amount flowed; and

the entire tract was described in the complaint, and was a part of the plaintiff's farm. It was used exclusively for farming purposes and had upon it no buildings or other structures.

The plaintiff testified in his own behalf as follows: "*Q.* Now, going back to your own lot, you told us what the number of acres and tons of hay you were deprived of, what, in your opinion, was the damage done to the lot by the taking of that land? In other words, how much less was the lot (referring to the entire tract) worth by reason of the five acres of hay that was being damaged by flashboards? *A.* About $300."

One Chalk, a witness for the plaintiff, testified as follows: " *Q.* How much less is that lot (referring to the lot described in the complaint) of John F. Rourke's worth in the market with the six acres being taken away from it, being constantly flooded with water? *A.* The damage to the lot is whatever the value of the crop will pay the interest on. — *Q.* We want that in round numbers. How much is the damage to that lot by reason of the six acres that had been taken from it? *A.* Well, with that taken away, of course the land has got that crop taken away, it reduces the value of the other, for the reason that it does not have the other crop to feed out and manure to put on the upper land."

These questions and answers were admitted against the defendant's objections, and to the admission of each of them, except the last question to the witness Chalk and his answer thereto, the defendant duly excepted.

The jury returned a verdict for the plaintiff in the sum of $50 damages to the date of the verdict and $100 in gross; and the defendant alleged exceptions, which, *Dewey*, J. having deceased, were allowed by *Maynard*, J.

*C. L. Gardner & C. G. Gardner*, for the defendant.

*J. B. Carroll & W. H. McClintock*, for the plaintiff.

MORTON, J.    This is a complaint under the mill act for damages caused to land of the plaintiff by flowing and percolating water raised by the defendant's dam. The land damaged by the percolation and flowage consisted of from three to five acres, and was part of a tract of land lying between a highway on the south and the river, where the dam was, on the north, and comprising about fifteen acres.

The plaintiff was allowed, against the objection of the defendant, to introduce testimony showing how much the entire tract of fifteen acres was damaged by the taking away of the part that was injured by percolation and flowage, and how much less the entire tract was worth by the taking away of the part of which the plaintiff was thus deprived. The only exception is to the admission of this testimony. We think that the evidence was admissible. *Palmer Co.* v. *Ferrill,* 17 Pick. 58, 63; *Maynard* v. *Northampton,* 157 Mass. 218; *Fales* v. *Easthampton,* 162 Mass. 422.

If the land taken or flowed constitutes a part of a larger tract, the effect of the taking or flowing upon the rest of the tract is a proper element of damage. Indeed, it would seem that the most correct method of estimating the damages in such a case would be to ascertain how much less the entire tract was worth by reason of the taking or flowing of a part. The owner of the dam has no just ground of complaint against such a rule, because he is not obliged to build his dam, and by building or raising his dam he must be deemed to take or flow the land in the situation and relation to other lands in which it is at the time when he builds or raises his dam. To limit the damages to the market value of the land actually taken or flowed would or might operate unjustly towards the landowner.

*Exceptions overruled.**

---

\* A similar decision was made on the same day in the case of

JEREMIAH ROURKE *vs.* CENTRAL MASSACHUSETTS ELECTRIC COMPANY.

COMPLAINT, for flowing lands under the mill act, Pub. Sts. c. 190. At the trial in the Superior Court, before *Dewey*, J., it appeared that the land of the plaintiff, including that damaged by percolation, consisted of from three to six acres (the evidence varying as to the precise amount), which was part of a tract of land lying between a highway on the south, from which the land was reached, and the bank of the river upon which the dam was erected on the north, containing some nine acres in addition to the amount flowed, the distance from the highway to the river being about one third greater than the width of the tract from east to west. The entire tract was described in the complaint, and was a part of the plaintiff's farm, and had upon it no buildings or other structures. It sloped more or less abruptly from the highway to near the edge of the water. The plaintiff testified in his own behalf as follows: " *Q.* Now, Mr. Rourke, how much less do you say that property (referring to the entire tract described in the complaint) is worth by reason of these six acres being covered with water? How much does the

SPENCER SAVINGS BANK *vs.* MARY L. COOLEY & others.

Hampden.    September 25, 1900. — October 18, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Bond to save Bank harmless from Mechanic's Liens, etc.*

At the trial of an action by a bank against the principal and sureties on a bond to recover for a breach of·a condition to save the bank harmless "from all mechanic's and other liens" on property of the principal on which the bank took a mortgage, and from "all expenses, costs, and charges arising out of any such lien or liens," it appeared that the mortgage was foreclosed by the bank for nonpayment of taxes and interest; that in the notice of the foreclosure sale it was stated that the "premises will be sold subject to all unpaid taxes, mechanic's liens, and assessments"; that at the sale the property was bid off by an agent of the bank for the amount of the mortgage, interest, and costs of foreclosure, and he took a deed in his own name and immediately quitclaimed to the bank; that after the foreclosure judgments were recovered on mechanic's liens against the property, and the principal and sureties were notified to defend the actions, but did not do so, and that to prevent the sale of the property the bank settled the judgments, the bondsmen having refused so to do on request. *Held*, that the bank had sustained no loss, and that this action to recover for the sums thus paid could not be maintained.

CONTRACT, on a bond for $1,000. The case was submitted to the Superior Court, and, after judgment for the defendants by

taking away of the six acres affect the value? I mean in dollars and cents. What was it fairly worth? What do you say this lot was worth less by reason of this flooding of the six acres? *A.* Twelve hundred dollars, I call it."

One Wells, a witness for the plaintiff, testified as follows: "*Q.* What do you consider the damage to that lot of land (referring to the entire tract described in the complaint) by reason of the taking away of the six acre tract? *A.* That means the hill, from the road down? Well, I don't know as I know how to appraise the damages taking it away from the rest of the farm. — *Q.* I don't suppose you can tell that, but you can tell us what that lot of land is damaged by the taking away of the six acres of such land as you describe, with the land and the character of the crops that you mention, how much that would be worth, how much the damage would amount to? Is the lot worth anything without the six acres? Is the lot worth anything with the six acres taken away? How much was the lot worth, Mr. Wells? What would that lot be worth with the six acres there when flooded? What was the lot worth with the six acres? *A.* I should say, as I look at it, the damage to that lot would be $1,000."

One Daly, a witness for the plaintiff, testified as follows: "*Q.* What were these six acres worth, taking them away, what was the damage to the

*Maynard*, J., to this court, on appeal, upon agreed facts, the nature of which appears in the opinion. If the plaintiff was entitled to recover, judgment was to be entered for him for such amount as should be proper; otherwise judgment was to be entered for the defendants.

*A. L. Green & F. F. Bennett*, for the plaintiff.

*J. B. Carroll & W. H. McClintock*, for the defendants.

---

rest of the land? *A.* I should think there was a damage to that property of about $1,000."

John F. Rourke, a witness for the plaintiff, testified as follows: " *Q.* What do you say, taking your father's lot (referring to the plaintiff's lot) as it was and as it is, what do you say the difference in the value is? How much less is it worth by reason of these six acres being flooded, taking into account the kind of soil and all about it? *A.* About $1,000, I should think."

These questions and answers were admitted against the defendant's objections, and to the admission of each of them the defendant duly excepted.

The jury returned a verdict for the plaintiff for the sum of $640 damages to date of the verdict and $942 in gross; and the defendant alleged exceptions, which, *Dewey*, J., having deceased, were allowed by *Maynard*, J.

The case was submitted on briefs by the same counsel.

MORTON, J. The exceptions in this case are disposed of by the opinion in *Rourke* v. *Central Massachusetts Electric Co.*, *ante*, 46.

*Exceptions overruled.*