OTIS COMPANY *vs.* LUDLOW MANUFACTURING COMPANY
& another.

Suffolk.    March 14, 1904. — May 20, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Mill and Mill Privilege.    Watercourse.    Constitutional Law.*

Under the mill act, Pub. Sts. c. 190, § 2, (R. L. c. 196, § 2,) a riparian owner, who begins a dam but does not finish it until a dam begun later by another riparian proprietor has been completed, if he completes and operates his dam within a reasonable time, has established the priority of appropriation required by the act which gives him a better right than the owner of the dam begun later and finished first, and his protection under the act is the same whether the other dam begun later is above his on the stream or below.

The mill act, now incorporated in R. L. c. 196, is constitutional.

The interference with the use of neighboring property by an appropriation of a mill site under the mill act, now incorporated in R. L. c. 196, is not a taking of property under the right of eminent domain.

The purchase of certain land on a watercourse, which is subject to an agreement running with the land restricting the height to which a dam can be maintained, does not affect the right of the purchaser as the owner of other land two miles farther down on the same stream to construct a dam under the mill act in connection with this other land.  Therefore in this case the court did not find it necessary to decide whether the contract in question was attached to the land to which it related or whether it was merely a personal contract of a former owner.

BILL IN EQUITY, filed as amended December 7, 1903, by the Otis Company, a manufacturing corporation, to enjoin the Ludlow Manufacturing Company and the Ludlow Cordage Company from flooding the plaintiff's mill site at Palmer by backing upon it the waters of the Chicopee River by means of a dam constructed and maintained by the Ludlow Manufacturing Company.

In the Superior Court the case was referred to Honorable James R. Dunbar as master.  Upon the facts found and agreed he ruled as matter of law that the plaintiff was not entitled to any relief.

The case came on to be heard for final decree, upon the master's report and the objections and exceptions thereto of the plaintiff and the defendants, before *Gaskill*, J., who reserved and

reported the case and all questions of law therein, including those raised by the objections and exceptions of each of the parties, for determination by this court.

*B. B. Jones,* (*C. L. Gardner* with him,) for the plaintiff.

*W. H. Brooks,* (*J. B. Carroll & W. S. Robinson* with him,) for the defendants.

KNOWLTON, C. J.    The plaintiff, a riparian proprietor upon the Chicopee River, has lately built across the stream a dam nineteen and twenty-nine one hundredths feet high and three hundred and fifty-three feet long, with a length upon the rollway of two hundred and ten feet.    Its expenditure for this development of power was $271,000.    The water power is used to generate electricity, which is conducted about three quarters of a mile up the stream to the plaintiff's factory at Three Rivers in Palmer, and there applied to the plaintiff's motors.    This factory previously had been run in part by water power taken from the river further up, and in part by steam power.

The first mentioned defendant, the Ludlow Manufacturing Company, which will hereinafter be called the defendant, is also a riparian proprietor upon the river, and at a point two miles below the plaintiff's dam, it has lately built a dam whose height is fifty-one feet, whose length is eight hundred and eighty feet, and the length of whose rollway is three hundred feet.    The defendant's expenditure for this development of power was $800,000.    This dam was built to enable the defendant to generate electricity to be conducted about four miles down the stream to furnish additional power for use at the defendant's old factories and at a new one in Ludlow.    The defendant's dam sets back water upon the plaintiff's dam in such a way as very greatly to diminish the water power there, and this bill is brought to enjoin the defendant from maintaining the dam and setting back the water.

The defendant became the owner in fee, in 1891, of certain land which includes the site of this present dam and the accompanying structures.    In 1894, and again in 1898, it employed an engineer to take levels and make surveys, plans and soundings along and upon the property, for the purpose of determining whether or not it was practicable to erect a mill dam upon the site of the dam since completed, and he did the work for which

he was employed. In January, 1899, the defendant employed one Ball, a civil and hydraulic engineer of experience, and the contract with him recited that the defendant had determined to erect a mill dam on this site, and required him to proceed immediately to make surveys, cross-sectionings, soundings, plans and estimates necessary for the erection of the dam, with raceways, canals and other structures, and to do such other things as might be necessary for the proper development of the water power on this mill site. Immediately thereafter the defendant determined upon the present height and present site of the dam. Ball and the defendant's other agents and employees commenced without delay the work of preparation for building the dam and other structures, and making said development, and they prosecuted it and the work of construction of the dam and other structures continuously and with due diligence to the completion thereof within a reasonable time. The actual work of building the dam was begun on August 3, 1899, with the commencement of the construction of the tail race, and within a reasonable time after making this beginning, the defendant completed the dam with all its appurtenances, and all the transmission lines and mechanism for the utilization of the water power in connection with a new mill which it had built near its other mills at Ludlow, and in connection with the other mills previously constructed, for the working of which this power was to be used. This work was completed and the power was ready to be utilized on October 16, 1901, and the mills were put in operation with the power, but the use of it was suspended by the bringing of this suit.

On the fourth day of April, 1900, the plaintiff determined to build a dam at the site of its present dam, and then began its preparatory work therefor, and prosecuted this work with due diligence until the eleventh day of August, 1900, when it began the work of excavating for the foundations of its dam, and from this latter date it continuously prosecuted the work of construction with due diligence to the completion within a reasonable time of its dam and all appurtenances necessary for the utilization of the power. This work was completed on July 1, 1901.

Each part of the work of building its dam, the preliminary, the preparatory and the permanent work, was begun by the de-

fendant before the corresponding part of the work of building the plaintiff's dam was begun by the plaintiff. The plaintiff's dam was completed first.

The principal question in the case is, What is the construction of the mill act as applied to these facts? The Pub. Sts. c. 190, § 2 (R. L. c. 196, § 2) is as follows: "No such dam shall be erected to the injury of a mill lawfully existing, either above or below it, on the same stream, nor to the injury of a mill-site on the same stream on which a mill or mill-dam has been lawfully erected and used, unless the right to maintain a mill on such last mentioned site has been lost or defeated by abandonment or otherwise; nor shall a mill-dam be hereafter erected or raised to the injury of any such mill-site which has been occupied as such by the owner thereof, if such owner within a reasonable time after commencing such occupation completes and puts in operation a mill for the working of which the water of such stream is applied," etc.

The plaintiff contends that the defendant has violated that part of the statute which forbids the erection of a dam to the injury of an existing mill site on which a mill dam has been lawfully erected; and the defendant contends that the erection of the plaintiff's dam was a violation of that part of the statute which forbids the erection of a mill dam to the injury of a mill site which has been occupied by the owner thereof, when the owner, within a reasonable time after commencing such occupation, completes and puts in operation a mill, for the working of which the water of such stream is applied.

The statute was enacted for the regulation of the rights of property owners upon streams adapted to use for the supply of power. The framers of it recognized the fact that such property, in many cases, could not be used profitably by an owner for a short distance along the stream, without affecting the property of other owners above and below, and preventing a like use of the stream for mill sites on other land. An enforcement by riparian proprietors of their rights at common law would often make it impossible for any of them to use water power effectively. Therefore, their personal interests, as well as the interests of the public, call for legislation modifying the common law, and regulating the rights of owners of this peculiar

kind of property. Our mill act is intended to meet this require-
ment in a way to promote the development of water power from
streams for the benefit of individual owners no less than for that
of the general public. *Lowell* v. *Boston*, 111 Mass. 454, 464.
The framers of the statute foresaw the possibility of a desire of
two riparian proprietors owning lands near together on the same
stream, each to establish a mill on his own land, when an advan-
tageous use of the water for power would make it impracticable
to maintain a mill in more than one of the two places. It was
proper to provide for such cases by statute. Accordingly, we
have the provision last above quoted. This is, in substance,
that as between riparian proprietors so situated, priority of ap-
propriation shall give the better right. The Legislature might
have established a different rule. If the time of completion of
a mill had been adopted as the time which should determine
precedence in the right to use the water, there would have been
an inducement to owners to engage in a race to see which could
first get the water upon his wheel. In different ways the results
of such a rule would have been harmful. The rule prescribed
by the statute calls for an actual appropriation of the site to use
for the development of water power, followed by a completion of
the work and the actual use of the water within a reasonable
time. This is substantially the construction which was put
upon the St. 1795, c. 74, in the case of *Bigelow* v. *Newell*, 10
Pick. 348, although that statute contained no special provision
touching this subject. The Rev. Sts. c. 116, § 2, was in different
language from the former act, and contained a prohibition of the
erection of a dam to the injury of any mill site on the same
stream. Under this statute the case of *Baird* v. *Wells*, 22 Pick.
312, was decided, in which it was held that the Revised Statutes
had changed the law, and that the remedy of one who had begun
his mill, but had not finished it until after another mill inter-
fering with his had been completed, was by an assessment of
damage under the mill act. Thereupon the Legislature passed
the St. 1841, c. 18, which is found in almost identical language
in that part of the Pub. Sts. c. 190, § 2, on which the present
defendant relies. This enactment restored the rule stated in
*Bigelow* v. *Newell*, 10 Pick. 348, which was held to have been
changed by the Rev. Sts. c. 116, § 2. *Storm* v. *Manchaug Co.*

13 Allen, 10, 15. That this is the true construction of this statute is further indicated by language used in other cases. *Dean* v. *Colt,* 99 Mass. 486, 487. *Fitch* v. *Stevens,* 4 Met. 426, 428. See also Washb. Easements, (4th ed.) 336, 337. For general discussion of the law, see *Fuller* v. *Chicopee Manuf. Co.* 16 Gray, 43; *Fiske* v. *Framingham Manuf. Co.* 12 Pick. 68; *Fitch* v. *Stevens,* 4 Met. 426; *Cary* v. *Daniels,* 8 Met. 466; *Gould* v. *Boston Duck Co.* 13 Gray, 442; *Smith* v. *Agawam Canal Co.* 2 Allen, 355, 356.

The plaintiff contends that the language of the statute, on which the defendant relies, applies only to owners on the stream below, and forbids their building a dam to the injury of an upper proprietor who has appropriated the power by beginning to build a dam which he completes within a reasonable time, and uses in connection with a mill, and that it does not apply to an owner on the stream above, who completes a dam, and seeks to have it remain with the outflow from the tail race undisturbed by back water from the dam of one who, in like manner, had previously appropriated the power at a point below. We are of opinion that this would be too narrow a construction of the provision. The building of a dam by an upper proprietor, for which he claims the common law right of a riparian owner to have the water flow down the stream without obstruction, would, if the claim were valid, be a great injury to the property of a proprietor below who had previously appropriated the power, but had been unable to complete his dam as soon as the upper dam was completed. In such a case, if the upper dam were protected as lawfully built under the mill act, in reference to a right to have the water flow freely away from it for the creation of power, the injury would be as great as it would be if a dam were built below which set back water upon a previously appropriated mill site above. The result would be that which is sought by the plaintiff in the present case, namely, a requirement that the dam below should be lowered so as not to set back water upon the upper mill. The reason for the enactment of the statute seems to require us to hold it applicable to a proper appropriation of water power in a stream, whether above or below the place where another subsequently begins to build, with the hope of preceding the other in the completion of his work.

This is in accordance with decisions in other States under similar statutes. *Miller* v. *Troost,* 14 Minn. 365, 369. *Kelly* v. *Natoma Water Co.* 6 Cal. 105. *Kimball* v. *Gearhart,* 12 Cal. 27. *Irwin* v. *Strait,* 18 Nev. 436.

The plaintiff contends that the statute so construed is unconstitutional. We do not deem it necessary to consider at length the constitutionality of this statute. It has often been considered and discussed in previous decisions, and it has uniformly been affirmed. It is urged that the provision for the payment of damages is inadequate. This argument is founded mainly on an assumption that there is a taking of property under the right of eminent domain; but whatever may be the interference with the use of neighboring property by an appropriation of a mill site, it is not a taking under the right of eminent domain. *Murdock* v. *Stickney,* 8 Cush. 113. *Hazen* v. *Essex Co.* 12 Cush. 475. *Lowell* v. *Boston,* 111 Mass. 454, 464. *Turner* v. *Nye,* 154 Mass. 579. *Head* v. *Amoskeag Manuf. Co.* 113 U. S. 9. It is unnecessary to determine, in this case, what constitutional rights one has, in reference to damages for an interference under statutory authority with his right at common law to use the water of a stream without obstruction, where such interference is permitted in the regulation of the rights of different owners, as necessary to an advantageous use of the power; nor is it important now to decide what principles will hereafter be applied in assessing the damages of the present plaintiff, in view of existing conditions. It is enough to say that in our opinion the provision for compensation for damages is adequate to meet such constitutional requirements as are applicable to a statute of this kind. Even in cases arising under statutes which authorize an exercise of the right of eminent domain, it has been held that similar provisions are sufficient to satisfy the language of the constitution. *Boston & Roxbury Mill Co.* v. *Newman,* 12 Pick. 467. *Brickett* v. *Haverhill Aqueduct Co.* 142 Mass. 394.

The plaintiff contends that the defendant was precluded from erecting a dam which would interfere with the right to use water power secured to the plaintiff, as between it and one Metcalf, by a parol contract in writing with Metcalf, made on September 26, 1882, but not recorded. This agreement was made in connection with a proposed conveyance from Metcalf to the plaintiff of

certain land on the river, and a proposed contemporaneous conveyance from the plaintiff to Metcalf of other land. In it each agreed with the other not to construct a dam for the development of his or its power, which should afford more than a prescribed number of feet fall that represented the extent of the power that was allowed to each, namely, nineteen and sixty-five one hundredths feet fall to the plaintiff and twenty-one and thirty-two one hundredths feet fall to Metcalf. Conveyances of land were subsequently made by each to the other in pursuance of this agreement, and Metcalf afterwards conveyed his land to the Ludlow Cordage Company, a corporation which holds it, as the master has found, for the benefit of the defendant as the equitable owner. The master also found that the defendant procured the sale from Metcalf to the Ludlow Cordage Company for its benefit, with full knowledge of this agreement.

We need not determine the effect of this contract in all particulars, for if we should assume in favor of the plaintiff that it was not merely a personal contract with Metcalf, but one which binds subsequent purchasers of his land who take with notice of it, we are of opinion that it is of no effect in the present case. It was an agreement made in reference to the use of the lands then owned by the respective parties, and of those which would come to them subsequently through the proposed conveyances. If a purchaser of either lot, with notice of the agreement, would be bound not to use it in violation of the agreement, it does not follow that such a purchaser would be deprived of his right to use other lands which he might chance to own in any lawful way. The land on which the defendant's dam was erected is nearly two miles further down the stream than the land which Metcalf owned, to which the agreement pertains. The dam was erected under the mill act, by virtue of the defendant's right as a riparian proprietor at the point where the mill site was established. The agreement was either a mere personal contract of Metcalf, or it was a contract connected with his land, which, in equity, would follow the land in the possession of a subsequent owner who took it with notice. If it follows the land, it has no effect upon the rights of the defendant as the owner of other land below. The ruling of the master on this part of the case was right.

*Bill dismissed with costs.*