FLORENCE M. DUNCAN & others *vs.* NEW ENGLAND POWER COMPANY & others.

Franklin.     September 19, 1916. — October 16, 1916.

Present: RUGG, C. J., LORING, BRALEY, & CARROLL, JJ.

*Mill Act. Electricity. Nuisance. Words,* " Water mill."

A mill, which is operated by water power to generate electricity to be transmitted and sold, is a water mill under R. L. c. 196, commonly known as the mill act, which provides, in § 1, that "A person may, as hereinafter provided, erect and maintain a water mill and a dam to raise water for working it, upon and across any stream not navigable."

Whether a mill is a water mill within the meaning of R. L. c. 196, § 1, depends on the power that drives its machinery and not on the character of its product.

A dam to raise water for working a water mill within the meaning of R. L. c. 196, § 1, cannot constitute a nuisance, the remedy for damages caused by such a dam being restricted by § 19 of that chapter to a petition under § 4.

BILL IN EQUITY, filed in the Supreme Judicial Court on January 24, 1916, by the owners of real estate with buildings thereon abutting upon or near the Deerfield River in the town of Charlemont, praying that the defendants be enjoined from continuing to maintain a certain dam across that river owned by the defendant New England Power Company, mortgaged to the defendant New England Trust Company and leased to the defendant Connecticut River Transmission Company.

The defendants filed pleas in bar, alleging that the dam in question was erected and maintained under the mill act contained in R. L. c. 196, and that the plaintiffs' remedy, if any, was exclusively under that act. The pleas alleged that the dam was

erected and was used to raise water for working a hydro-electric power plant belonging to the defendant power company situated at a point near the river below the dam; that ninety per cent of the power so generated was sold by the power company to manufacturers operating mills in that vicinity; that a part of the balance was sold for municipal lighting purposes and a part for street railways; and that less than one per cent of the power was sold outside the Commonwealth.

The case was argued on the pleas before *Pierce*, J., who held that the mill act contained in R. L. c. 196 must be construed to cover a dam erected for the generation of electricity, and therefore found that the pleas were good and ordered that a decree be entered dismissing the bill. A final decree was entered in accordance with this order, and the plaintiffs appealed.

R. L. c. 196, § 1, is as follows: "A person may, as hereinafter provided, erect and maintain a water mill and a dam to raise water for working it, upon and across any stream not navigable."

Section 4 of that chapter is as follows: "The owner or occupant of land which has been overflowed or otherwise injured by such dam may obtain compensation therefor if, within three years after such injury, he files a petition in the Superior Court for the county in which the land or any part thereof lies describing the land alleged to have been overflowed or injured and stating the damage sustained so that the record will show with sufficient certainty the matter heard and determined."

Section 19 of that chapter is as follows: "No action shall be maintained at common law for the recovery of damages for the erection, maintenance or use of a mill or mill-dam, if a remedy therefor is provided in this chapter."

*W. A. Davenport*, (*A. S. McLaud* with him,) for the plaintiffs.

*D. Malone*, for the defendants.

LORING, J. The pleas in bar filed in this case present this question: Is a mill operated by water power to generate electricity to be transmitted and sold a water mill within R. L. c. 196, § 1?

It seems to have been assumed in this Commonwealth that it is. It was so assumed in *Rourke* v. *Central Massachusetts Electric Co.* 177 Mass. 46. And in *Otis Co.* v. *Ludlow Manuf. Co.* 186 Mass. 89, it was assumed that mills operated by water power to generate electricity to be used as the motive power of cotton and

cordage mills owned by the same corporations were water mills within the act. Finally the point was so decided in New Hampshire under a similar statute. *McMillan* v. *Noyes,* 75 N. H. 258.

The plaintiffs' contention to the contrary is mainly based upon *Southwest Missouri Light Co.* v. *Scheurich,* 174 Mo. 235. It there was decided that a plant operated by water power to generate electricity was not a mill within Mo. Rev. Sts. 1889, c. 113.

But the act there in question was not an act similar to R. L. c. 196. That act (Mo. Rev. Sts. 1889, c. 113) was an act delegating the power of eminent domain to any person proposing to erect a mill to be operated by water power. It not only gave him power to secure a right of flowage over lands of other persons but it authorized him in case he owned land on one bank of the river only to condemn land on the other bank for the abutment of his dam. To justify the delegation of the power of eminent domain the court was of opinion that the mill to be erected must be a public mill. And they pointed out that by chapter 114 of the Missouri Revised Statutes (said to be of "twin origin and . . . of equal age") public mills were defined to be "All grist mills which grind for toll, and all water grist mills, built on any watercourse by authority of any statute or order of any court," and that it was there provided that public mills "shall grind for customers at least four days in each week." The court decided that for these reasons and for the further reason that the wording of the original statute enacted in 1822 had been in substance maintained in the several re-enactments of it, the word "mill" had its primary meaning of "An engine or machine for grinding or comminuting any substance, as grain, by rubbing or crushing it between two hard, indented surfaces."

No one of the grounds on which *Southwest Missouri Light Co.* v. *Scheurich* was decided is applicable here. The act here in question (R. L. c. 196) is not founded on the exercise of the power of eminent domain but is an act regulating the rights of the several proprietors of land bordering on the same stream. The decisions to that effect are collected in *Otis Co.* v. *Ludlow Manuf. Co.* 186 Mass. 89, 95. If the word "water mill" in the original statute enacted by the Province (Prov. St. 1713–14, c. 15) applied to mills in the primary sense of the word only, the word ceased to have that meaning when the Province law was re-enacted by the

Commonwealth in St. 1795, c. 74, of which R. L. c. 196 is the last re-enactment. The manufacturing industries of the Commonwealth have been built up on that construction of that act. By the practice of a hundred years a water mill within what is now R. L. c. 196, § 1, includes mills for the manufacture of goods and the rolling of iron as well as for the grinding of corn. See, for example, *Wolcott Woollen Manuf. Co.* v. *Upham,* 5 Pick. 292; *Fiske* v. *Framingham Manuf. Co.* 12 Pick. 68; *Palmer Co.* v. *Ferrill,* 17 Pick. 58; *Charles* v. *Monson & Brimfield Manuf. Co.* 17 Pick. 70; *Bates* v. *Weymouth Iron Co.* 8 Cush. 548; *Howard* v. *Proprietors of Locks & Canals,* 12 Cush. 259; *Stetson* v. *E. Carver Co.* 97 Mass. 402; *Drake* v. *Hamilton Woolen Co.* 99 Mass. 574.

The plaintiffs' next contention is that this mill is not within R. L. c. 196, § 1, because none of the electricity there generated is sold in Franklin County. This contention is based upon a recital found in the original act, Prov. St. 1713–14, c. 15.* But this recital was omitted when the Province law was re-enacted by St. 1795, c. 74. It cannot be seriously contended that a water mill for the manufacture of cotton goods, for example, none of which are sold within the county in which the mill is situated, is not within R. L. c. 196, § 1.

The last contention of the plaintiffs is that the generation of electrical power to be transmitted and sold for operating machinery could not have been within the contemplation of the legislators when the original act was enacted in 1713–14, and for that reason this water mill is not within R. L. c. 196, § 1. But what is manufactured in a mill is not the test of its being or not being a water mill within R. L. c. 196, § 1. The thing which makes or does not make the mill a water mill within that act depends upon the power which drives its machinery. A mill to grind corn, to roll iron, to

---

* The recital of Prov. St. 1713–14, c. 15, is as follows: "Whereas it hath been found by experience that, when some persons in this province have been at great cost and expence, for building of mills serviceable for the publick good, and benefit of the town, or considerable neighbourhood, in or near to which they have been erected, that, in raising a suitable head of water for that service, it hath sometimes so hapned that some small quantity of lands or meadows have been thereby flowed and damnified, not belonging to the owner or owners of such mill or mills, whereby several controversies and lawsuits have arisen; for prevention whereof for the future, . . ."

manufacture goods, to generate electricity or to make any other article or thing is a water mill within R. L. c. 196, § 1, provided the motive power which drives its machinery is in whole or in part water power.

On the allegations of the pleas the dam here complained of is a dam within R. L. c. 196. It follows that it is not a nuisance and that the only remedy for injuries caused by it to the land and buildings of the plaintiffs is by petition for compensation under that act. See R. L. c. 196, §§ 19 & 4; *Stowell* v. *Flagg,* 11 Mass. 364; *McNally* v. *Smith,* 12 Allen, 455. We have examined all the cases relied on in this connection by the plaintiffs and find nothing in them requiring special notice.

*Decree affirmed with costs.*