IDA T. DICKINSON & others *vs.* NEW ENGLAND
POWER COMPANY.

Franklin.    September 16, 1925. — September 30, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Water and Watercourse. Equity Jurisdiction,* To enjoin flowing resulting
from ice blockade caused by dam. *Damages,* Damnum absque injuria.
*Mill Act.*

The mill act, now G. L. c. 253, is not violative of art. 10 of the Declaration
of Rights nor of art. 14 of the Amendments to the Federal Constitution,
and is a bar to the maintenance of a bill in equity by owners of land
bordering on and near Deerfield River to enjoin a corporation from
maintaining a dam on the river so that, at the time of the breaking up
of the river in the spring, water and ice, which formerly had passed
down the unobstructed stream causing no injury to the plaintiffs, were
held back, overflowed the land of the plaintiffs, deposited ice and waste
material, injured the premises and farm buildings and cellars, and
deprived the plaintiffs of access to an abutting highway.

BILL IN EQUITY, filed in the Superior Court on February 7,
1925, and afterwards amended, by owners of riparian and
other land on the north side of Deerfield River in Charle-
mont, to enjoin the defendant from allowing the waters of
the river to be set back from its dam "in such a way,
during any period of the year and under any conditions to
be reasonably expected in this climate, as to overflow or
injure" the plaintiffs' land.

The defendant demurred on the following grounds:

"1. The bill of complaint states no cause of action within
the equity jurisdiction of the court.

"2. The facts set forth in the bill of complaint show that
the merits of this controversy have already been determined
in a proceeding to which these complainants or their prede-
cessors in title were parties.

"3. The facts set forth in the bill of complaint show that
the bill is a collateral attack on a previous decision of this
court based on a ground which could have been set forth in
the previous proceeding."

The demurrer was heard by *Callahan*, J., and was sustained. By order of the judge a final decree was entered dismissing the bill.   The plaintiffs appealed.

*H. J. Field*, (*M. J. Levy* with him,) for the plaintiffs.

*R. Proctor*, (*F. W. Knowlton* with him,) for the defendant.

BRALEY, J.   It appears from the allegations of the bill, which are admitted by the demurrer, that the defendant, a riparian proprietor, built in 1912 a dam across the Deerfield River at Shelburne Falls, an unnavigable stream, for the purpose of raising a head of water to operate its mill.   The river is a mountain stream which at times rises rapidly, and before its waters were dammed, with the exception of one or two years when some water and ice came upon the lands of some of the plaintiffs who are riparian owners above the dam without causing damage, no overflow of water or accumulation of ice had affected the lands in question for over thirty years, and since the building of the dam, the lands have not been flowed even in times of freshet by the river overflowing its banks.   But during a period beginning in 1913 and extending to 1923, some of the lands, and at times all of them, without the plaintiffs' consent have been overflowed by the water containing ice combined with waste material which have been deposited and left on the premises.   In some instances these floodings reached the farm buildings and cellars as well as encircling their dwellings; and also deprived them of access to the abutting highway at several points. But even if at no time since the dam was built have the lands been flowed by the river rising above its banks at high water in open weather, yet the injuries complained of were caused by the dam holding the water and ice at the time of the breaking up of the river in the spring which formerly had passed down the unobstructed stream causing no injury. It was under substantially similar conditions that on January 24, 1916, a suit in equity was begun by those who owned lands described in the present bill, praying that the defendant be enjoined from continuing to maintain the dam because it was a nuisance.   This bill was dismissed by the trial court; and, on appeal, it was held that the dam was a dam within R. L. c. 196, relating to mills and mill dams, which provided

that a person may under certain provisions hereinafter prescribed "erect and maintain a water mill and a dam to raise water for working it, upon and across any stream not navigable"; that the dam was not a nuisance; that the only remedy was a petition for compensation under the act; and the decree was affirmed. *Duncan* v. *New England Power Co.* 225 Mass. 155.

The parties who were the plaintiffs in that suit or their successors in title, thereupon brought in 1923 a petition for compensation as provided in G. L. c. 253, § 4. It alleged in substance that the petitioners' lands had been "overflowed or otherwise injured" as a result of the defendant's dam, basing their claim on substantially the same facts as were set forth in the bill in equity; but alleging additional injuries suffered during the extended period. It was decided, however, following *Smith* v. *Agawam Canal Co.* 2 Allen, 355, that the petition could not be maintained as the defendant was entitled to a reasonable use of the stream for lawful purposes in connection with its mill, and of the riparian estate within the watershed if it left the amount of water undiminished except so far as might be reasonably necessary, and that compensation for consequential injuries to the petitioners' estates caused by the flooding, and depositing of ice and refuse, were not recoverable. *Duncan* v. *New England Power Co.* 250 Mass. 228. The facts in those cases are alleged to have been in substance the same as the facts stated in the case at bar in which relief is sought on the following grounds: "That such flowing in this Commonwealth wherein no compensation is provided is, in law, unjustified and wrongful"; that "so far as the said mill act, common law, State law, court decision or any form of procedure does, by its terms or otherwise, purport to authorize or suffer such flowing of" the plaintiffs' "lands without compensation for injuries therefrom, any of such apparent authorities is not legally operative without prior consent and, if so, is in violation of art. 10 of the Constitution of Massachusetts, and is void"; that "the said flowings and otherwise injuring of" the plaintiffs' "lands without their prior consent where, as here, no compensation is provided by law is,

under any form of procedure, whether based on common law, State law, rule of property, court decisions or otherwise, in violation of the Fourteenth Amendment to the Federal Constitution, wrongful and illegal"; that "the judgments of our Supreme Court in the foregoing cases are all a taking of the properties of" the plaintiffs' "without due process of law in violation of the express guaranties of said Fourteenth Amendment to the United States Constitution and are, therefore, as to them, of no legal effect."

It is broadly contended, that, the defendants' dam, which obstructs the natural flow of the Deerfield River, being an unjustifiable invasion of the plaintiffs' rights to the use and enjoyment of their property at common law, its continuance should be permanently enjoined.

"The right to maintain a dam which shall cause the water of a natural stream to accumulate upon the land of proprietors above is a right which did not exist at common law. In the absence of statute provisions, every proprietor has the right to have the water of a natural stream flow from his premises in its accustomed channel, free and unobstructed; for any obstruction of such flow the party injured had his remedy by action, or by abatement of the cause of the obstruction. Such right of action and power to abate hindered and discouraged the erection of mills to a great extent, since they could only be safely built by those who were proprietors by good title of all the land which might be flowed by them. In early times, when mills were more immediately subservient to the convenience and necessities of the inhabitants in their immediate neighborhood, it was the policy of the Legislature to promote and encourage their erection." *Brigham* v. *Wheeler,* 12 Allen, 89, 90. It was for this purpose that St. 1795, c. 74, generally referred to as the mill act, was enacted, which, with some modifications and codifications by reënactment, is now G. L. c. 253. Rev. Sts. c. 116. Gen. Sts. c. 149. Pub. Sts. c. 190. R. L. c. 196. *Talbot* v. *Hudson,* 16 Gray, 417. *Lowell* v. *Boston,* 111 Mass. 454, 465. See also *Fiske* v. *Framingham Manuf. Co.* 12 Pick. 68, 70, 71. *Otis Co.* v. *Ludlow Manuf. Co.* 201 U. S. 140, 151.

It is true, as the plaintiffs contend, that by art. 10 of the

Declaration of Rights "Each individual . . . has a right to be protected . . . in the enjoyment of his . . . property according to standing laws," and it is settled that the Legislature has no power to suspend the operation of a general law in favor of an individual. *Holden* v. *James,* 11 Mass. 396.

The mill act, however, is not designed to abrogate general rules of law. "It avoids the evil of special legislation by establishing a rule of universal application." *Clarke* v. *Cordis,* 4 Allen, 466, 474. "The principle on which this law is founded is not, as has sometimes been supposed, the right of eminent domain, the sovereign right of taking private property for public use . . . . But the principle seems to be this: A man may place a dam on his own land, in order to raise a head of water for mills, in the use of which the public have an interest; this is the extent of the direct authority given by the statute." *Murdock* v. *Stickney,* 8 Cush. 113, 116. Nor is it violative of other provisions of art. 10 of the Declaration of Rights, that "no part of the property of any individual can, with justice, be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people . . . . And whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor."

The right conferred under the mill act is a right to flow land upon payment of compensation in accordance with the statute by those who lawfully erect the mill and maintain the dam. *Lowell* v. *Spring,* 6 Mass. 398. *Cook* v. *Stearns,* 11 Mass. 533. *Wolcott Woollen Manuf. Co.* v. *Upham,* 5 Pick. 292. It is nevertheless an easement in its nature even if the owner of the soil who has not consented may wall against it. If this is done the extent of the easement may be diminished but its character is not changed. *Isele* v. *Arlington Five Cents Savings Bank,* 135 Mass. 142, 144. *Kenison* v. *Arlington,* 144 Mass. 456.

In *Boston & Roxbury Mill Corp.* v. *Newman,* 12 Pick. 467, 475, 479, 480, it was said that the Legislature considered it for the public good to encourage the erection of mills, and hence subjected the property of its citizens to the control of

the mill owner, he paying damage caused by flowage.   And in *Fitch* v. *Stevens,* 4 Met. 426, 428, it was decided that since St. 1795, c. 74, no action at common law would lie against a mill owner for flowing the land of another by maintaining a dam to furnish water to be used in connection with his mill. The sole remedy of the owner of the servient estate, unless the dam amounts to a public or private nuisance, is under the mill act.   *Fitch* v. *Stevens, supra.   Eames* v. *New England Worsted Co.* 11 Met. 570.   *Duncan* v. *New England Power Co.* 225 Mass. 155.

The constitutionality of the statute need not be further considered by a review of our decisions stating and restating the grounds upon which it rests.   It has uniformly been held that "the provision for compensation for damages is adequate to meet such constitutional requirements as are applicable to a statute of this kind."   *Otis Co.* v. *Ludlow Manuf. Co.* 186 Mass. 89, 93–95, and cases there collected.

If we turn to the Federal law, which is invoked, it was declared in *Otis Co.* v. *Ludlow Manuf. Co.* 201 U. S. 140, that the mill act as construed by this court did not violate the Fourteenth Amendment to the Constitution of the United States.

The defendant is entitled under the statute to the reasonable use of its mill and dam without being responsible for incidental injury thereby caused to the lands which the plaintiffs hold subject to this right.   *Thurston* v. *Hancock,* 12 Mass. 220.   *Callender* v. *Marsh,* 1 Pick. 418.   *Greenleaf* v. *Francis,* 18 Pick. 117.   *Carson* v. *Western Railroad,* 8 Gray, 423.   *Gannon* v. *Hargadon,* 10 Allen, 106.   *Middlesex Co.* v. *McCue,* 149 Mass. 103.   *Cassidy* v. *Old Colony Railroad,* 141 Mass. 174.   *McKeon* v. *New England Railroad,* 199 Mass. 292.   *Jubilee Yacht Club* v. *Gulf Refining Co.* 245 Mass. 60.   But where the damage is of "such a nature as to amount to a nuisance, either public or private, the party injured has his remedy at law.   If it is not a nuisance it is *damnum absque injuria.*"   *Eames* v. *New England Worsted Co.* 11 Met. 570, 572.

The decree dismissing the bill is affirmed with costs.

*Ordered accordingly.*