## HOLYOKE WATER POWER CO. v. AMERICAN WRITING PAPER CO., Inc.

### No. 3293.

Circuit Court of Appeals, First Circuit.

Feb. 15, 1938.

Bentley W. Warren, of Boston, Mass. (Samuel Williston, of Cambridge, Mass., Nathan P. Avery and James M. Healy, both of Holyoke, Mass., and Donald C. Starr, of Boston, Mass., on the brief), for appellant.

Claude R. Branch, of Boston, Mass. (Charles P. Curtis, Jr., of Boston, Mass., Russell L. Davenport, of Holyoke, Mass., and Charles Ryan, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This case arises between the same parties, and involves the same water-power system and the same underlying contracts and leases, as were before this court in Holyoke Water Power Co. v. American Writing Paper Co., 90 F.2d 509, C.C.A.1. It is unnecessary to restate the facts. We held that the grants of mill powers "carried a right to use the specified amount of water for power or other industrial uses." Page 513. This conclusion was based on a very careful consideration of the history of the enterprise and the underlying grants, and we see no occasion to modify our views.

The questions now before us involve the rights of the defendant as owner or lessee in the use of certain millsites and mill powers originally granted by the plaintiff. The essential facts are simple. The defendant has installed on certain millsites hydroelectric generators driven by the mill powers appurtenant to such sites. The electric current so made is used for driving machinery located on *other* millsites than those on which the generators and water wheels stand. This the plaintiff contends the defendant has no right to do.

Some thirteen sites are involved and more than forty mill powers. While there is general similarity in the terms of the grants, they are not identical. In some of them it is expressly provided that the mill power shall be *"used only in and upon"* the specified millsite; in others, the same understanding may be inferred; all the mill powers are appurtenant to millsites. In the view which we take differences in the wording of the grants are not important. Taking the case in the aspect most favorable to the plaintiff, viz., that of a mill power granted as appurtenant to a given site with a proviso that the mill power shall be used only in and upon that site, may the defendant install hydroelectric machinery and use the current elsewhere?

At common law water powers have long been regarded as sui generis. As early as Luttrel's Case, 4 Coke 86, it was held that where a water power had been acquired by prescription the owner might thereafter use it as he saw fit; the same is true of water powers obtained under the mill acts. If the defendant is prohibited from using the mill powers in the way in which it is using them, the restriction must be found in the grants. Nowhere in any of the

agreements and grants of the mill powers in question is there any restriction on such use, unless it is to be found in the provisions making each of the powers appurtenant to some site—which standing alone would certainly have no such effect—and requiring a power to be *"used* only in and upon" the site to which it is appurtenant. The plaintiff's case rests on the contention that the mill powers are not being "used," within the meaning of the grants, on the site where the water wheels and generators are located, but on other sites where the electric current from the generator is applied to motors, to lights, or to other industrial uses.

■ When these grants were made, "using" a water power meant in common speech using it to run a water wheel. It is still the ordinary meaning of the phrase. "The use of water for power according to common understanding means its application to a water wheel." Holyoke Water Power Co. v. Whiting & Co., 276 Mass. 528, 537, and 538, 177 N.E. 568, 572. In Utah Power Co. v. Pfost, 286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038, the plaintiff contended that its hydroelectric plant merely converted into electric energy the power of the falling water; that the stream of falling water continued, in effect, in the form of electricity across the state line; and that the state had therefore no right to tax it—a contention resembling the one now made. It was held untenable. The court said:

"Electrical energy has characteristics clearly differentiating it from the various other forms of energy, such as chemical energy, heat energy, and the energy of falling water. Appellant here, by means of what are called generators, converts the mechanical energy of falling water into electrical energy. Thus, by the application of human skill, a distinct product is brought into being and transmitted to the places of use. The result is not merely transmission; nor is it transmission of the mechanical energy of falling water to the places of consumption; but it is, first, conversion of that form of energy into something else, and, second, the transmission of that something else to the consumers. * * *

"We think, therefore, it is wholly inaccurate to say that appellant's entire system is purely a transferring device. On the contrary, the generator and the transmission lines perform different functions, with a result comparable, so far as the question here under consideration is concerned, to the manufacture of physical articles of trade and their subsequent shipment and transportation in commerce." Sutherland, J., 286 U.S. 165, at pages 179 and 180, 52 S.Ct. 548, 551, 76 L.Ed. 1038.

In Duncan v. New England Power Co., 225 Mass. 155, 113 N.E. 781, a hydroelectric generating plant was held to be "a watermill" within the meaning of the Massachusetts Mill Acts. In Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688, a different question was presented, and some phrases in the opinion support the plaintiff's view; but we do not think the Ashwander decision was intended to overrule the Pfost Case on the point under discussion, or ought to be so considered. On a question of this character, involving the construction of agreements relating to real estate, we are probably bound by the opinion of the state court, supra. In any event, we agree with it. We think a water power is *"used"* where it is applied to a water wheel or some similar apparatus, and that the use which is made of the power of the water wheel is not significant on the question before us.

■ To summarize: The plaintiff sold a specified amount of water under a specified head to be used on a specified site. There was no attempt to define or restrict the purposes for which the power derived from the water might be used. It may be that when the grants were made both parties envisioned mill buildings erected on the mill-sites, containing machinery suitable for operation by the appurtenant mill power; but the grants were not limited to such a situation. The expression "using a mill power on" a certain site carried no such restriction, nor is any such restriction fairly inferable as necessary for the protection of the plaintiff's rights. As suggested in the Pfost Case, supra, many uses of power involve the transformation of energy from one form to another. Where this occurs power is used. The provision now relied upon by the plaintiff may well have been inserted in order to prevent the transfer of mill powers from one site to another by means of canals—which might affect the plaintiff's security for rentals.

The judgment of the District Court is affirmed, with costs.