Illinois Anti-Vivisection Society and George D. Patterson, Appellants, v. City of Chicago et al., Appellees.

Gen. No. 38,899.

Opinion filed March 24, 1937. Rehearing denied April 12, 1937.

STEPHEN T. RONAN, of Chicago, for appellants; EDWARD R. NEWMANN, of Chicago, of counsel.

BARNET HODES, Corporation Counsel, SHANNON, MOR-RILL & JOHNSON and BAYLEY MERRICK, WEBSTER & GREGORY, all of Chicago, for appellees; GEORGE P. MERRICK and CASPER NATHAN, Assistant Corporation Counsel, and ANGUS ROY SHANNON, of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This appeal is by the plaintiffs from an order entered in the circuit court of Cook county dismissing the amended bill of complaint on motion of the defendants. The action was founded on a bill in equity filed on January 29, 1932, by the plaintiffs against the city of Chicago, defendant, praying for the issuance of an injunction restraining the city of Chicago from disposing of dogs in the custody of the poundmaster in charge of the Municipal Animal Shelter, to various institutions of learning, hospitals or their allied institutes, pursuant to the provisions of section 2 of an ordinance passed by the city council of the city of Chicago on December 1, 1931, and to which bill of complaint a demurrer was filed. Thereafter on December 2, 1932, the University of Chicago, Northwestern University, Chicago Medical School, University of Illinois, Michael Reese Hospital and Loyola University jointly filed on intervening petition praying leave to intervene and to be made parties defendant, which petition was granted, and they now appear as defendants in the proceeding.

On February 1, 1933, an amended bill of complaint was filed, which in substance alleges that the plaintiff, Illinois Anti-Vivisection Society, is a corporation, not organized for profit, chartered by the State of Illinois, which is devoted to the abolition of vivisection and the enforcement of acts and ordinances relating to cruelty to animals; that the plaintiff George D. Patterson is a citizen of the city of Chicago, a taxpayer and an officer of said society; that on July 20, 1931, the city council

of Chicago, by virtue of the authority granted by the State of Illinois, under the Cities and Villages Act, ch. 24, ¶ 65, subsection 80, Illinois State Bar Stats. 1935; Jones Ill. Stats. Ann. 21.144, passed an ordinance which provides that the poundmaster shall be appointed by the commissioner of police according to law. He shall be charged with the duty of enforcing the ordinance of the city of Chicago relating to cruelty to animals, and when it becomes necessary to do so, destroy any animal impounded in pursuance of the ordinance of the city, and when he does so, he shall observe all proper care to destroy such animal humanely on the premises of the Municipal Animal Shelter.

The complaint further states that on December 1, 1931, the city council passed an amended ordinance providing for the appointment by the commissioner of police of a poundmaster, who shall be a resident of Chicago and under the direction of the commissioner of police; that the poundmaster shall be in charge of the Municipal Animal Shelter, and shall have charge of the care of all animal activities of the department of police as provided for by ordinance, and that he shall, when it becomes necessary, destroy humanely, or otherwise dispose of, any animal impounded in pursuance of the ordinance of Chicago, and that part of the ordinance which is the basis of the controversy in this case is as follows:

"Whenever any reputable institutions of learning, hospitals, or their allied institutes in the City of Chicago shall make application to the Commissioner of Health for permission to use humanely unclaimed impounded animals for the good of mankind and the increase of knowledge relating to the cause, prevention, control and care of disease, the Commissioner of Health, on being satisfied that the said animals are to be so used, shall request the Commissioner of Police

to surrender said animals as applied for by the said institutions of learning, hospitals or their allied institutes, and thereupon it shall be the duty of the Commissioner of Police to cause said animals to be surrendered by the Poundmaster to said institutes of learning, hospitals or their allied institutes for said uses."

The bill further represents that the Revised Chicago Code of 1931, ch. 110 provides for the disposition of dogs by the poundmaster as follows:

"Section 3962 . . . if such (unlicensed) dogs are not redeemed within three days after being impounded, such dogs shall be destroyed by the poundmaster.

"Section 3963 . . . if at the expiration of five days such (licensed) dogs shall not be redeemed—the poundmaster or person in charge of the pound in which such dog is confined shall destroy such dog."

The bill further represents that it is provided by Section 3932 that ". . . The Mayor and Commissioner of Health shall advertise for bids for the removal of dead animals from the streets and public grounds of the City . . ." and it is further represented that the amended ordinance of December 1, 1931, is in conflict with the section of the Revised Code above set forth and contradictory thereto; that these sections do not, by implication, wording or reference, in said ordinance repeal the previous regulations of the Revised Code.

It is also alleged that unclaimed animals in the custody of the poundmaster are public property, having an intrinsic value both while alive and when dead, and that any disposal of them is a gift of public property to private persons and institutions without warrant or authority of law; that the ordinance does not give all citizens the same right to obtain the dogs; that it is arbitrary in its provisions in that it vests in the commissioner of health of the city of Chicago the right to

decide what shall constitute humane treatment and what is for the good of mankind and what increases knowledge and what are reputable institutions of learning.

It is further charged in the bill of complaint that the amended ordinance is illegal and unconstitutional, and that by reason thereof the city loses a great amount of revenue that otherwise would accrue to it; that George D. Patterson, one of the plaintiffs, as a taxpayer and citizen, complains of the unlawful diversion of public property, and charges that his property is subject to greater taxes than he would have to pay if such dogs were disposed of for a consideration to the city; that they are public property, and as a taxpayer he is entitled to any benefit that might accrue to the city by the proper disposition of their bodies for financial remuneration, and that unless the city be enjoined from enforcing the said amended ordinance such losses would continue to the detriment of the city and this plaintiff as a taxpayer; that dogs at the rate of 1,000 a month were being delivered pursuant to the provisions of said ordinance free of charge to institutions of learning, hospitals, and their allied institutions, notwithstanding there were other individuals ready, able, willing and desirous of purchasing said dogs, but were deprived of the right so to do under the terms of the amended ordinance.

Therefore, the plaintiffs pray that delivery of animals from the Municipal Animal Shelter without remuneration be enjoined and that all of the defendants be enjoined from continuing the illegal acts complained of.

Thereafter on May 21, 1934, the defendants, and each of them, filed a motion to dismiss the amended bill of complaint, upon the grounds therein specified, and a hearing was had on said motion by the court. On

February 3, 1936, a decree was entered directing that the amended bill of complaint be dismissed.

The question in this case is whether the adoption of the ordinance was beyond the power conferred upon the council by statute, and whether the council had or did not have authority to donate property or revenues of the city as provided for in the ordinance.

The authority granted to the city council by the State appears in ch. 24, ¶ 65 (80), Cities, Towns and Villages, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 21.144, which reads as follows:

"Animals running at large—Taxing dogs.] § 80. To regulate, restrain, and prohibit the running at large of horses, cattle, swine, sheep, goats, geese and dogs and to impose a tax on dogs."

It is earnestly contended by the plaintiffs that from this power granted to the city, no authority is vested in the council to donate these animals to anyone or to delegate its authority with reference to the disposition thereof, and they cite the case of *Washingtonian Home v. City of Chicago,* 157 Ill. 414. Upon this question there can be no serious dispute, and it must be agreed that the city cannot by any power conferred upon it donate through its officers any revenues of the city, but such revenues can only be paid out or appropriated by the city council or its officers in the manner and for the purposes authorized by law.

The ordinance involved in the case here on appeal is questioned on the ground that it was beyond the power granted by statute to the city council of Chicago, ch. 24, ¶ 65 (80), Ill. State Bar Stats. 1935; Jones Stats. Ann. 21.144. Upon an appeal of this character only such jurisdiction may be exercised by this court as is provided for by statutory provisions upon like questions.

The jurisdiction of Appellate and Supreme Courts is provided for in the Practice Act, ch. 110, ¶ 203,

sec. 75, subd. (1), Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 104.075, in these words:

"(1) Appeals shall be taken directly to the Supreme Court in all cases in which a franchise or freehold or the validity of a statute or a construction of the constitution is involved, and in cases in which the validity of a municipal ordinance is involved and in which the trial judge shall certify that in his opinion the public interest so requires, and in all cases relating to revenue, or in which the State is interested as a party or otherwise."

The Supreme Court in passing upon what would be within the jurisdiction of this court, in the case entitled, *City of Chicago v. Openheim,* 229 Ill. 313, said:

"If the controversy related only to the power of the city, under the statute, to pass the ordinance, or to the question whether the ordinance is invalid as being an unreasonable and oppressive exercise of that power, this court would have no jurisdiction to entertain these writs of error. Where, however, an ordinance attempts to interfere with a constitutional right and that is the question determined by the trial court, an appeal direct to or a writ of error from this court will lie for the purpose of reviewing said judgment. (*Wood v. City of Chicago,* 205 Ill. 70.)"

Taking the words of the Supreme Court as a guide, this court will consider the appeal of the plaintiffs upon the question of whether the ordinance here involved is invalid as being an unreasonable and oppressive exercise of power granted by the State.

The plaintiffs contend that the city ordinance must be uniform and by its provisions must not discriminate between persons or locations, and further that the city council has no authority to donate property or revenues of the city of Chicago.

The defendant in reply to this contention offers this theory and urges that by the ordinance in question the

city council delegated its authority to the commissioner of health, an appointed official in a representative capacity to request the commissioner of police of Chicago to surrender the animals, as provided for by the council, for the purpose provided by the ordinance. At this point it is interesting to note that upon the expenditure of moneys of the city, one of the questions raised by the plaintiff as not being within the authority granted the city council, the Supreme Court in the case of *Avery v. City of Chicago*, 345 Ill. 640, indicated that instead of an income being received by the city of Chicago by reason of a contract providing for the removal of dead animals, the city is now paying to have these dead animals removed.

This court has studied the ordinance which was passed by the city council under authority of ch. 24, ¶ 65 (80) of the Cities, Towns and Villages Act, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 21.144. This act by its provisions permits the city council to pass an ordinance to provide for the appointment of a board of health, and to provide by such ordinance regulations necessary to promote health and the suppression of disease in Chicago, and also by ordinance to provide regulations which will prohibit the running at large of animals designated in the provision of the statute, and also that there may be imposed a tax on dogs. This granting of powers further provides for the necessary authority by ordinance to regulate the police and to prescribe their several duties. The purpose of the ordinance in question is to provide regulations which will promote health and the suppression of disease, so that disease may be studied in its various forms for the benefit of the public, and generally by institutions of learning, hospitals and allied institutions located in Chicago, and in order that the city may make use of abandoned and unclaimed animals which are housed in the Municipal Animal Shelter. That this

may be done, the animals are distributed to these institutions of learning for the purposes indicated herein.

While the ordinance provides regulations for the benefit of humanity in the distribution of the abandoned animals, the council by its ordinance does not delegate its powers to the commissioner of health or the commissioner of police. It is but a regulatory and expedient provision for which the ordinance was passed by the city council of the city of Chicago.

The Supreme Court in the case of *City of Paxton v. Fitzsimmons*, 253 Ill. 355, held that a tax on dogs provided for by an ordinance is a regulation and not a tax for revenue, and that the ordinance was a proper regulation, even though the ordinance itself did not provide for the disposition of the funds so collected.

The question is raised whether the plaintiffs were properly joined in this action. It is conceded that the Illinois Anti-Vivisection Society was not a proper party to be joined as plaintiff in an action of this kind, and that under the Practice Act (ch. 110, ¶ 154, sec. 26, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 104.026) being misjoined it may be dropped by order of court at any stage of the cause before or after judgment, and for that purpose the plaintiffs entered a motion to dismiss the Illinois Anti-Vivisection Society, a corporation as party plaintiff, and that the cause proceed as to the plaintiff George D. Patterson. Accordingly, it will be necessary now to consider whether the plaintiff George D. Patterson, who is a taxpayer, has suffered a special injury by the operation of the ordinance here questioned.

In order to consider this matter properly it will be necessary to determine upon what ground the plaintiff here has been injured by the operation of this ordinance.

Plaintiff in support of his position contends that the mere fact of his being a taxpayer raises the presumption that he has sustained an injury within the meaning of the law, and cites a number of authorities, from which he suggests it is apparent that the phrase ''public at large'' is intended to define the entire group of citizens, taxpayers and non-taxpayers. An action on their behalf must be brought either by the attorney general or the State's attorney, but a taxpayer is deemed to have sustained an injury separate and distinct from any that might have been received by a non-taxpayer. In the case upon which the trial court relied, *Koehler v. Century of Progress*, 354 Ill. 347, Mr. Justice Stone of the Supreme Court said: ''The rule . . . laid down and oft repeated is, that equity will at the suit of a tax-payer enjoin public officers from expending public funds to carry out a contract let in violation of law. Illegal expenditure of public funds may always be said to involve a special injury to the tax-payer not suffered by the public at large.''

The defendants in answer to this contention cite *Kerfoot v. People*, 51 Ill. App. 409, wherein this court said:

''Nothing appears in the bill to show that the complainant, as a citizen and resident of Cook county, has any interest or right in the premises, or will suffer any injury from the threatened closing of the gates on Sunday, not common to each of the public. It is only where an obstruction of a public right is such that a special injury to one or more persons has been done, that individuals may maintain actions for violation of such right, and in such case the special injury is the gist of the action.''

This proceeding was upon an action wherein certain of the directors of the World's Columbian Exposition, were adjudged guilty of contempt of court and fined

for violation of an injunction secured upon complaint of a stockholder and taxpayer to prevent the closing of the World's Fair on Sundays.

Then again we have the case of *Koehler v. Century of Progress,* 354 Ill. 347, wherein a citizen and taxpayer sought an injunction against the Century of Progress and the South Park Commissioners restraining them from operating the fair on public grounds without the payment of adequate compensation. The Supreme Court in passing upon the right of the plaintiff as a taxpayer to maintain the litigation, said:

"No expenditure of public funds is involved in this case as made by the bill, and unless appellant's bill shows a special injury not common to the public generally, her suit is filed without right. As we have seen, the bill alleges that the contract should require payment to the South Park Commissioners of a large sum of money, and that, because this was not done, the appellant and other tax-payers similarly situated suffer in the matter of taxation. Though this point seems not to be particularly stressed in the briefs it is clear that such allegations in the bill do not show special injury to appellant."

Just what special injury has been sustained by this taxpayer does not clearly appear from the allegations of the bill. It is true that no issue is made as to Patterson's being a taxpayer, still his status as a taxpayer alone does not establish the fact that he sustained a special injury by reason of the illegal acts complained of in the bill.

The allegation appearing in the bill is that this plaintiff complains as a taxpayer and citizen of the unlawful diversion of public property, and charges that thereby his property is subject to greater taxes than he would otherwise have to pay if said dogs were disposed of for a consideration to the city; that they are public property, and as a taxpayer he is entitled to the benefit that

may accrue to the city by the proper disposition of their bodies for financial remuneration. This is a general allegation; it is not specific, and does not indicate that the complainant would suffer a special damage, except that the bill does charge that the complainants have a bona fide bid of 25 cents apiece for the bodies of said dogs. But from this statement alone it does not appear that they offered this bid for the bodies of the animals. In other words, it only means that they have a bid which they may offer.

After full consideration of all the questions that have been called to our attention, we believe the court acted properly in dismissing the amended bill of complaint, for the reason that it does not state a cause of action which would warrant the trial court in granting the relief prayed for by the plaintiffs. Therefore, the decree dismissing the amended bill of complaint is affirmed.

*Decree affirmed.*

Denis E. Sullivan, P. J., and Hall, J., concur.