Regents of the University of Wisconsin, Respondent, vs. Dane County Humane Society and another, Appellants.*

*December 6, 1951—January 8, 1952.*

---

* Motion for rehearing denied, without costs, on March 4, 1952.

*Lucius A. Squire* of Madison, for the appellants.

For the respondent there was a brief by the *Attorney General* and *Warren H. Resh,* assistant attorney general, and oral argument by *Mr. Resh.*

BROWN, J. Sec. 174.13 (1), Stats., declares that public health and welfare are protected by the humane use of animals for diagnosis and treatment in advancing medical and allied services, and states that the purpose of the section is to assure an adequate supply of dogs for such purposes.

Sec. 174.13 (2), Stats., reads:

"Notwithstanding any provisions of this chapter to the contrary, any humane officer, constable, village marshal, city police officer, or person or organization who by virtue of deputized authority or contract with a municipality has custody of an unclaimed or unredeemed live dog, as defined in section 174.10, shall dispose of the same to the University of Wisconsin, Marquette University, or to any other educational institution of higher learning chartered under the laws of the state and accredited to the University of Wisconsin, upon requisition thereof by such institution. Such requisition shall be in writing, shall bear the signature of an authorized agent, and shall state that such dog or dogs are requisitioned for scientific or educational purposes. If a requisition is made for a greater number of dogs than is available at a given time, the proper person shall supply those immediately available and shall withhold from other disposition all unclaimed and unredeemed dogs coming into his custody until the requisition has been fully discharged, excluding therefrom impounded dogs as to which ownership is established within a reasonable period. A dog left by its owner for disposition is not to be regarded as an unclaimed or unredeemed dog under this chapter. If operated by a municipality, the pound shall be entitled to the payment of $1 for each dog so requisitioned. An institution making such requisition shall provide for the transportation of the dog or dogs secured by virtue thereof."

Sub. (3) prescribes the records of unclaimed and unredeemed dogs to be kept by persons and organizations having custody of such animals.

Sub. (4) prohibits sending living cats and dogs out of the state for medical, surgical, or chemical experiment.

Sub. (5) was enacted by the 1951 legislature and so far as material here, reads:

"Any humane society which fails or refuses to comply with the provisions of subsection (2) shall become immediately ineligible for any further public assistance or public funds under section 58.07 (5) or otherwise, from any county, city, or village. Upon receipt of a sworn statement by any officer of any educational institution authorized by such institution to make such statement on its behalf, of noncompliance by any humane society with the provisions of subsection (2), it shall be unlawful for the treasurer of any municipality to pay any public funds to any such society until the complainant withdraws its statement of noncompliance or supplements it by a statement showing compliance. . . . The failure of any humane society or other organization mentioned in subsection (2) to comply with the provisions thereof shall also constitute grounds for the revocation of its corporate charter in an action brought for that purpose by the attorney general. If it appears on the complaint of any person that anyone, including a humane society, or any officer, employee, or other agent of such society, is violating or failing to carry out any provision of this section, the attorney general, or the district attorney of the proper county, may investigate, and may, in addition to any other remedies, bring action in the name and on behalf of the state of Wisconsin, against any such person or persons, or society, to enjoin the violation of this section and to require compliance herewith. . . ."

Sec. 174.10, Stats., referred to in sec. 174.13 (2), among other provisions, directs peace officers and duly authorized humane societies to seize and impound dogs for which no license has been issued and also dogs running at large or committing certain acts. It further directs persons who have seized or impounded any such dog to deliver it to the local humane officer, if there is one, or to a local peace officer. This officer shall then notify the owner, if he be known, and if unknown shall advertise for the redemption of the animal.

If after five days the owner does not claim the dog the officer shall dispose of the dog in a proper and humane manner.

The society's first contention is that the definition of unclaimed or unredeemed dogs in sec. 174.10, Stats., is so vague and uncertain as to be meaningless. We do not find it so. Dogs which have been properly picked up because they were unlicensed, or were committing acts or occupying places forbidden to dogs by the statute and have thus come into the custody of humane or police officers and have not been claimed or redeemed by their owners after the notice prescribed by the statute has been given and the period of grace has expired,—such dogs, it appears to us, are those defined by sec. 174.10 and referred to by sec. 174.13. We do not see how there can be difficulty in determining which of the dogs in custody fill the statutory description, and we hold that there is no invalidity to the statute on account of uncertainty.

The defendant society submits that it is a wholly private organization, and its agent is a private person neither of which have a contract or deputized authority from any municipal body to catch dogs and therefore sec. 174.13 (2), Stats., does not apply to them. The complaint did not allege, nor the answer admit, the existence of deputized or contract authority between a municipality and the defendant society or humane officer. The defendants, in their brief and argument, deny that such a relationship exists. On these pleadings we can well say that the society does not appear to be an organization having deputized authority or contract with a municipality by virtue of which it has custody of unclaimed or unredeemed live dogs and therefore in 1950 it had no absolute duty to deliver them on requisition to the university. Sec. 174.13 (5), Stats. 1951, takes in *any* humane society. It is not limited, as sec. 174.13 (2) is, to those having contract or deputized authority. Though the society lacks such authority sub. (5) commands it to conform to sub. (2)

under penalty. The enactment of sub. (5) is further indication that sub. (2) did not already embrace humane societies having no contract or delegated authority. Sub. (5) was enacted after this action was begun but it appears to have been treated by the parties and by the trial court as within the issues on which declaratory judgment was sought. It was so treated in the appellate briefs and argument and we include it in our decision and opinion.

It does not require serious argument to establish that the capture and impounding of stray dogs and the disposition of them is a proper exercise of the police power of the state. 2 Am. Jur., Animals, pp. 719, 721, 799, secs. 31, 34, 146. As such, the state may impose the rules and the conditions under which the power is exercised. We have not found any law which confers a property right in such a dog in the person or society reducing the dog to custody. Without a property right in the dog there is no property right to dispose of it. Such rights do not accrue from mere custody. The humane society might seize such dogs and impound them, by virtue of sec. 174.10 (1), Stats., and, until the enactment of sec. 174.13 directed otherwise, it might dispose of them as it chose "in a proper and humane manner." Sec. 174.10 (2). But such statutory permission gave no perpetual, inalienable right to the society to determine how and when the disposition shall be made. In *State v. Marshall & Ilsley Bank* (1940), 234 Wis. 375, 291 N. W. 361, the state sought to take unclaimed bank deposits and the bank endeavored to retain them. Sec. 220.25 declared the state's right to such unclaimed property and we held the statute constitutional. If the custodian of funds, regularly deposited, could not defeat the claim of the state to them when they appeared to be abandoned, surely the custodian of an unclaimed dog cannot be held to have a property right to retain or dispose of it superior to that of the state when the interest of the state in the animal has been declared, as it has here

by sec. 174.13 (2), and the state has specifically designated the disposition to be made of it. The pre-eminent authority over the unclaimed dogs is in the state, as it was over the unclaimed bank deposits and we consider it is well within the legislative power to take for public purposes the animals which no one owns or, at least, which the owner does not claim or redeem. When the state does so the custodian who has the animal pursuant to the authority conferred upon it by sec. 174.10 is not aggrieved. The custodian who had no property in the dog is deprived of none, and is not protected by the Fourteenth amendment in the retention of what does not belong to him, nor does sec. 13, art. I of the Wisconsin constitution require compensation to the custodian when the state asserts its claim to the property which the custodian does not own.

The society's claim that it is a purely private organization and not subject to the provisions of secs. 174.13 (2) and 174.13 (5), Stats., is not valid, as we have pointed out. It is a humane society and sec. 174.13 (5) brings all humane societies within the purview of sec. 174.13 (2); but if it was so that this society in some way is not one which is authorized to seize and impound the dogs described in sec. 174.10, its position in the present controversy would not be improved because in that case it would be compelled by sec. 174.10 to hand over such dogs as it might have impounded. to a local humane or peace officer who is expressly subject to the provisions of sec. 174.13 (2).

In summary, we conclude that sec. 174.13 (2), Stats. 1949, is applicable to the defendant Maki in his official capacity as humane officer, and that by virtue of sec. 174.13 (5), Stats. 1951, it has been made applicable to the defendant society and to defendant Maki in his capacity as a servant or agent of the society; that the statute is not void for uncertainty; and that it is a constitutional exercise of legislative power.

*By the Court.*—Order and judgment affirmed.