MASSACHUSETTS SOCIETY FOR THE PREVENTION OF CRU-
ELTY TO ANIMALS & another *vs.* COMMISSIONER OF
PUBLIC HEALTH & others
(and two companion cases [1]).

Suffolk.   December 1, 1958. — May 15, 1959.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, &
WHITTEMORE, JJ.

*Animal.   Constitutional Law,* Animal, Abandoned property, Due process
of law, Police power, Obligation of contracts, Grant or appropriation
of public money or property.   *Abandoned Property.   Statute,* Construc-
tion.   *Words,* "Pound," "Arrangement."

Impounded animals within G. L. c. 49A, inserted by St. 1957, c. 298, § 1,
are only lost or strayed animals, but are all lost or strayed animals,
however acquired, in the custody of an animal pound while it is acting
as such, and not merely lost or strayed animals in the custody of a dog
officer or placed in the custody of a pound "pursuant to contract or
other arrangement with . . . public authority." [222–224]
The title of a statute may be considered in interpreting textual provisions
of doubtful meaning. [223]
A continuing practice of a humane society owning and maintaining an ani-
mal hospital and shelter of receiving lost or strayed animals from
private finders, although approved and relied on by dog officers and
public authorities, could not be ruled to be "pursuant to . . . ar-
rangement with" such officers and authorities within the purview of
G. L. c. 49A, inserted by St. 1957, c. 298, § 1. [224–225]
G. L. c. 49A, inserted by St. 1957, c. 298, § 1, contains reasonable stand-
ards for determining that lost or strayed dogs and cats may be treated
as property abandoned by their former owners and no constitutional
provision protecting property rights precludes disposition of such
abandoned animals as required by the statute. [225–226]

---

[1] The companion cases are Paul H. Rice & others *vs.* Commissioner of Pub-
lic Health and Eric H. Hansen & others *vs.* Commissioner of Public Health.

After enactment of legislation, such as G. L. c. 49A, inserted by St. 1957, c. 298, § 1, regulating the disposition of lost or strayed animals as abandoned property, any property rights of a finder of such animals are subject to the legislation. [226–227]

G. L. c. 49A, inserted by St. 1957, c. 298, § 1, authorizing certain licensed institutions to obtain abandoned lost or strayed animals from animal pounds for the purpose of scientific investigation, experiment or instruction, is a proper exercise of the police power for the public welfare. [227–229]

Charters and contracts are not constitutionally protected from a valid exercise of the police power. [229]

G. L. c. 49A, inserted by St. 1957, c. 198, § 1, is not an unconstitutional exercise of the police power by reason of the fact that it restricts the area in which incorporated humane societies owning and maintaining animal hospitals and shelters may operate according to their traditional views and those of donors of gifts to them. [229]

G. L. c. 49A, inserted by St. 1957, c. 298, § 1, allowing private institutions licensed by the commissioner of public health to requisition for the purpose of scientific investigation, experiment or instruction abandoned lost or strayed animals from animal pounds subject to the commissioner's regulations and upon payment of a fee to the pound, does not call for a "grant, appropriation, or use of public money or property" in violation of art. 46 of the Amendments to the Massachusetts Constitution. [229–230]

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on May 2, 1957.

Two PETITIONS, filed in the Supreme Judicial Court for the county of Suffolk on August 6, 1957.

The cases were reserved and reported by *Whittemore*, J., without decision.

*William B. Trafford*, (*Edward G. Fischer* with him,) for Massachusetts Society for the Prevention of Cruelty to Animals and others.

*Brooks Potter*, (*Gordon K. Bell* with him,) for Animal Rescue League of Boston.

*Warren F. Farr*, (*James Vorenberg* with him,) for President and Fellows of Harvard College and others.

*Joseph H. Elcock, Jr.*, Assistant Attorney General, (*Dorice S. Grace & Hugh Morton*, Assistant Attorneys General, with him,) for the commissioner of public health.

WHITTEMORE, J. These cases are brought to test the constitutionality of St. 1957, c. 298, which by § 1 inserted G. L. c. 49A. Massachusetts Society for the Prevention of

Cruelty to Animals (the Society) and Animal Rescue League of Boston (the League), Massachusetts charitable corporations, have brought a bill in equity against the commissioner of public health (the commissioner) and three educational institutions which have applied for licenses under the statute, to enjoin the enforcement of the statute. Paul H. Rice and twenty-three other taxable inhabitants, not more than six from any one county, have petitioned under G. L. c. 29, § 63, to restrain the expenditure of money or the incurring of obligations for the purposes of or under the purported authority of the statute. Eric H. Hansen and ten other citizens have asked a writ of mandamus directing the commissioner to refrain from action under the statute. Each of the cases is here on reservation and report by a single justice of this court on the admitted allegations and the facts stipulated in the equity proceedings.

The standing of the plaintiffs and the petitioners (hereinafter, the petitioners) in any case is not questioned, and we do not pause to examine such issues. See: As to the equity suit, *Wilbur* v. *Newton,* 302 Mass. 38; *Luscomb* v. *Bowker,* 334 Mass. 468, 475–476. As to the taxpayers' suit, *Sears* v. *Treasurer & Receiver Gen.* 327 Mass. 310, 317–320. As to mandamus, *Brewster* v. *Sherman,* 195 Mass. 222, 224; *Sears* v. *Treasurer & Receiver Gen., supra,* 315–317; compare *Kaplan* v. *Bowker,* 333 Mass. 455, 459–460.

Statute 1957, c. 298 (the statute), is entitled "An Act authorizing certain licensed institutions to obtain lost and strayed animals from animal pounds for the purpose of scientific investigation, experiment or instruction." It authorizes an institution, as defined, to obtain from the commissioner a license to obtain impounded animals from animal pounds, as defined, for the purpose of scientific investigation, experiment or instruction or for the testing of drugs or medicines. An animal pound is required to deliver to a licensee upon its application from its available impounded animals such number and kinds of animals as the licensee shall specify, and if application is made for a greater number of animals than the pound has available, the pound

339 Mass. 216                                           219

Mass. Soc. for Prevention of Cruelty to Animals *v.* Comm. of Public Health.

must thereafter withhold from execution and deliver the requisitioned animals as they become available. No animal shall be available for delivery unless it has been impounded for ten days and has not been claimed and redeemed by its owner or by any individual who personally desires it as a pet. No animal may be delivered which has been delivered to the pound by its owner with a signed request for its immediate execution. A licensee shall at its own expense return to the pound any animal identified, claimed and redeemed by its owner, but the licensee shall not be liable to the owner for any injury to or illness or subsequent death of any such animal. The licensee is required to pay to the pound such reasonable fee as the commissioner may establish to reimburse the pound for the prior care of any requisitioned animal. Licenses may be revoked by the commissioner if the licensee violates the statute or rules or regulations under it or if the standards, facilities, practices, or activities of the licensee are such that the continued exercise of rights under the license would not be in the public interest. Duly authorized representatives of the Society and the League are given the right to inspect the standards, facilities, practices or activities in connection with the use of animals by any licensee and also to have notice of and be present at hearings for the issuance and revocation of licenses. The commissioner may, subject to appropriation, incur such expenses as may be necessary to enable him to do what the statute requires of him. The statute by § 2 inserts in G. L. c. 140 a new section (141A) which makes inapplicable to licensed institutions the sections of c. 140 (§§ 137–141, inclusive) in respect of licensing of dogs, kennel licenses and inspections, notices required of persons becoming owners or keepers of dogs, and penalties for keeping unlicensed dogs. The statute by § 3 amends § 151A of c. 140 so that the obligation of dog officers to kill unlicensed dogs caught and confined by them is made subject to the requirement of delivery thereof to a licensed institution under the statute, and the holding period is extended from six to ten days.

The preamble of the statute asserts the needs of public health and safety and that properly conducted scientific experiments on animals are necessary for the welfare of mankind. The statute became effective April 18, 1957. Licenses have been issued but the licensees have agreed not to seek animals under them until specifically authorized by the commissioner. No authorizations have so far been given.

Regulations have been promulgated by the department of public health under the statute. They establish a fee of $3 to be paid to the pound for each dog and of $1.50 for each cat, received by the licensee from the pound, and they make careful provision for the humane treatment of animals in the custody of the licensees including the use of anesthetics during operative procedures.

Both the Society and the League (the societies) own and maintain animal hospitals and shelters in various places in the Commonwealth. Each hospitalizes and shelters lost or strayed dogs and cats whose owners are unknown to them. These are classified as to source as follows: (a) dogs picked up by the League under a contract (see G. L. c. 140, § 151) by which it acts as dog officer for the city of Boston, (b) dogs placed in the care of the societies by municipal dog officers, (c) dogs picked up, or dogs delivered by finders other than dog officers, and '(d) cats picked up or cats delivered by finders. The dogs received by the Society in category (c) are in number about ten times those received in category (b). For the League the proportion is about two to one. The societies learn of the existence of dogs and cats, in categories (c) and (d), upon telephone or other notice from private persons or from dog officers or other municipal officers, or upon delivery thereof.

The societies dispose of lost and strayed dogs and cats as follows: Those which in the opinion of a veterinarian are so old, diseased or injured that their continued existence entails needless suffering or of such disposition that they would menace public safety if at large are painlessly destroyed without reference to a holding period; those whose

339 Mass. 216 221

Mass. Soc. for Prevention of Cruelty to Animals *v.* Comm. of Public Health.

owners can be located within the holding period are delivered thereto; and those suitable for pets whose owners are not found are delivered to suitable substitute keepers if found within the holding period. Subject to the foregoing, dogs at the expiration of ten days and cats at the expiration of two days are painlessly destroyed, except that a substantial number of animals deemed to be exceptionally suitable for return to owners or as pets for new keepers are kept for some additional period, up to approximately two weeks in the case of dogs and one week in the case of cats. The regulations provide that a humane society may hold an animal for not more than thirty days beyond the ten day statutory period notwithstanding a requisition if "it believes its owner or a new keeper can be located." Substantially all dogs destroyed are dogs not wearing tags evidencing valid licenses.

The societies "are under no obligation to any city, town or other public authority to continue to pick up or accept delivery of . . . dogs and cats" not picked up as dog officer.[1] However, municipal dog officers and other officials and employees know and approve of the activity and rely on it as the method by which a substantial portion of the stray dog and cat population is dealt with. In many municipalities in reliance on the work of these or other similar charitable organizations, dog officers do little or no collection work.

The declared policies of the societies have never included disposing of dogs or cats for use in experiments and the societies, by their officers, have declared opposition to such procedure, and contributions have been made to the societies by persons who were opposed thereto and were familiar with the position of the societies.

Other relevant facts are noted in the course of the opinion.

---

[1] No reference has been made to St. 1881, c. 278, under which the mayor of Boston might issue warrants to dog officers directing the delivery of unlicensed, uncollared dogs to the Society to be held for five days and thereafter, subject to redemption, to be killed or upon payment of the license fee sold or otherwise disposed of. We take it in view of the stipulation that the operative statute now is G. L. c. 140, § 151, permitting mayors and selectmen to contract with humane societies to act as contract dog officers.

The single brief for all petitioners in the three cases asserts that municipally impounded dogs held for destruction or sale are public property which may not be granted to institutions not publicly owned and controlled under art. 46 of the Amendments to the Constitution of the Commonwealth. Thus they do not contend that the disposition of municipally impounded dogs held by the societies is any concern of their former owners or of the societies or like charitable institutions (humane societies). If, however, the act is construed to apply to animals other than municipally impounded dogs, the petitioners contend that it may deprive owners, and in any event it deprives the societies, of property and impairs the obligations of their charters and of their contracts with their benefactors.

## CONSTRUCTION OF THE STATUTE.

The statute defines animal pound as "any establishment or individual which confines, cares for or disposes of seized, lost or strayed animals pursuant to contract or other arrangement with any city or town or other public authority, and any officer appointed under sections one hundred and thirty-six A to one hundred and seventy-four, inclusive, of chapter one hundred and forty to enforce the laws relating to dogs." The League is an animal pound because it is a contract dog officer. The Society and the League are animal pounds because they care for and dispose of dogs pursuant to arrangement with statutory dog officers.

An impounded animal is "any animal in the custody of an animal pound." The statute requires that an animal pound deliver to licensees from "its available impounded animals such number and kinds of animals as the licensee may specify." The petitioners contend that there is an implied qualification of the definition of impounded animal; that is, it must be in custody pursuant to contract or other arrangement with public authority. We disagree, for reasons to be stated. There are, however, certain qualifications in respect of impounded animals the existence of which answer some

339 Mass. 216                                         223

Mass. Soc. for Prevention of Cruelty to Animals *v.* Comm. of Public Health.

of the specifications made by the petitioners in support of the construction which we reject. One is imposed by the title. The animals are only those which are in custody because lost or strayed. A title speaks significantly of the meaning of textual provisions not otherwise plain. *Commissioner of Corps. & Taxn.* v. *Chilton Club,* 318 Mass. 285, 292. *Rockland-Atlas Natl. Bank* v. *Massachusetts Bonding & Ins. Co.* 338 Mass. 730, 735. See *Vigoda* v. *Barton,* 338 Mass. 302, 304. Constitutional considerations would bar the application of the act to an animal held pursuant to arrangement with the owner for care and return. Provisions of the statute show that such animals are excluded as are all animals over which anyone is claiming and exercising rights of ownership, or for which anyone is willing to provide a new home. Animals delivered by owners for execution are withheld from delivery. The rights of owners and those who desire the animal as a pet are recognized as paramount until delivery of the animal after the expiration of a ten day or longer holding period. The rights of the owner prevail after delivery of the animal subject to the acts of the licensee in the interval between delivery and redemption. The direction of the statute is to "withhold from execution" animals requested by the licensee. Thus it is clear that the statute is dealing with those animals which are unclaimed and which will be executed if not claimed.

We recognize that there exists in the statutory use of the word "pound" an implication of reference to a place for confinement of strays maintained by authority. But there is no implication in any statute that a private agency maintaining a pound by contract or arrangement with public authority may not keep in the pound strays which their own policies and practices cause them to pick up. The purpose of the statute would be disserved by construing it so that animals not received under such a contract or arrangement are not in the pound, although held subject to the same practices and policies of the agency as to return to owners, delivery to new keepers and destruction. There being no impairment of private right in the construction which serves

the purpose of the statute (see *infra,* CONSTITUTIONALITY), we rule that all lost or strayed animals within the custody of the societies are in the custody of an animal pound while and so long as such agency is holding any such animals as a dog officer or pursuant to contract or arrangement under the statute.

"Animal" is defined in the statute as "the dog and the cat specifically and all other sentient creatures other than man." There being no showing of practices or policies of pounds maintained primarily for the confinement of farm animals or other animals than dogs or cats we do not reach any questions of the construction of the statute as applied to animals which may be materially differentiated from dogs and cats. We intend no suggestion.

The petitioners refer to the vagueness of the word "arrangement" but not in the respect relevant to the discussion so far. They recognize and assert that under G. L. c. 140, § 151A (dogs seized by a dog officer "may be placed in the care of the holder of a kennel license or of a domestic charitable corporation incorporated exclusively for the purpose of protecting animals from cruelty, neglect or abuse"), the bailment, though it may be informal and without consideration, "may be aptly described as an arrangement in the nature of a contract."

The respondents contend that in any event strayed and lost dogs and cats which are taken in by the societies independently of a bailment from, or the act of, a dog officer, are impounded because the practices of these agencies in this respect are known and approved of and relied upon by dog officers and public authorities. The argument is in effect, we take it, that the continuing practices are in the nature of an offer to do the dog catcher's work, accepted by the acquiescence of the authorities, their reliance and the practice of the dog officer to do little or no collection work, and this is a practical working "arrangement." Doubtless, an "arrangement" may exist between public authority and the Society or the League or like agency in the absence of an express bailment. We assume that a dog officer or other

339 Mass. 216                                        225

Mass. Soc. for Prevention of Cruelty to Animals *v.* Comm. of Public Health.

authority could so declare an understanding to a humane society that its acts thereafter in receiving stray dogs would be "pursuant to . . . arrangement with" such authority. But we think we may not rule, on the general statement of facts now before us, that animals received by the Society or the League, not as dog officer or a bailee of such, are received pursuant to an "arrangement."

## Constitutionality.

We do not rule on the constitutionality of the statute in applications other than those presented on the facts before us.

1. The statute reasonably treats lost cats and dogs as abandoned property. The former owners have no remaining property interest which the Constitutions protect, and the State may assert a paramount interest in respect of the ownership, disposition or use of the property.

"At common law, abandoned personal property was not the subject of escheat, but was subject only to the right of appropriation by the sovereign as bona vacantia. See 7 Holdsworth, A History of English Law (2d ed.) 495–496." *Anderson Natl. Bank* v. *Luckett*, 321 U. S. 233, 240. "As a broad principle of jurisprudence . . . a state, subject to constitutional limitations, may use its legislative power to dispose of property within its reach, belonging to unknown persons. Such property thus escapes seizure by would-be possessors and is used for the general good rather than for the chance enrichment of particular individuals or organizations. . . . [T]he disposition of abandoned property is a function of the state . . . . [The New Jersey escheat statute being construed is] the exercise of a regulatory power over abandoned property." *Standard Oil Co.* v. *New Jersey*, 341 U. S. 428, 435–436.

The State may assert its prerogative in respect of abandoned property to take title (see G. L. c. 200A), or to destroy the property, or authorize its destruction, as a potential

nuisance.[1]    *Tower* v. *Tower*, 18 Pick. 262, 263.   *Cummings* v. *Perham*, 1 Met. 555, 557.   *Blair* v. *Forehand*, 100 Mass. 136, 139–140.   *Morewood* v. *Wakefield*, 133 Mass. 240, 242. *Moore* v. *Mills*, 191 Mass. 56, 57.   (All dog cases.)   We see nothing in the constitutional protections of property which bars the State from the alternative course of requiring, and using its agencies to facilitate, other disposition of abandoned personal property.   See *Simpson* v. *Los Angeles*, 40 Cal. 2d 271, 279–280, app. dism. 346 U. S. 802, reh. den. 346 U. S. 880; *New York State Voters League against Vivisection, Inc.* v. *Hilleboe*, 202 Misc. (N. Y.) 687, 689, app. dism. 282 App. Div. (N.Y.) 671; *Regents of the Univ. of Wis.* v. *Dane County Humane Soc.* 260 Wis. 486, 492.

The provisions of the statute for determining that the animals may be treated as ownerless and hence as abandoned property are reasonable.   It is settled that, for the immediate destruction of dogs as nuisances, it is sufficient that they be without tags showing that they are licensed. *Morewood* v. *Wakefield*, 133 Mass. 240.   *Moore* v. *Mills*, 191 Mass. 56.   Cats may be classed with dogs for purposes of such procedure.   See *Blair* v. *Forehand*, 100 Mass. 136, 140.   The necessity for summary treatment of property interests in stray cats and dogs is unquestioned.   The statute provides a longer holding period than was heretofore required under G. L. c. 140, § 151A, during which the owner may reassert his rights.   And the regulations authorize holding exceptional animals for a period in excess of what the societies themselves have considered necessary.

2. The property rights principally asserted by the petitioners, applicable in view of our construction of the statute, are those of the societies as finders; rights which, they say, are "valid . . . against all the world except the true owner." *McAvoy* v. *Medina*, 11 Allen, 548, 549.   But even if, in view of their policies to destroy the animals, the societies have

---

[1] The property rights of an owner who is identified and is asserting rights against other persons, in unlicensed or uncollared dogs, are not relevant to the present inquiry.   See *Cummings* v. *Perham*, 1 Met. 555; *Uhlein* v. *Cromack*, 109 Mass. 273; *Lacker* v. *Strauss*, 226 Mass. 579; *Baer* v. *Tyler*, 261 Mass. 138; *Janusis* v. *Long*, 284 Mass. 403, 408.

finder's rights, and we need not decide, they are subject to the existing rights of the State. See 7 Holdsworth, A History of English Law, 496, and discussion, *supra.* A State may take into public ownership abandoned property giving the custodian no interest. See G. L. c. 135, § 6, c. 200A; *Provident Inst. for Sav.* v. *Malone,* 221 U. S. 660, 664; *Security Sav. Bank* v. *California,* 263 U. S. 282, 285–286; *Anderson Natl. Bank* v. *Luckett,* 321 U. S. 233, 240. The statute is prospective in its operation. The General Court may limit and change finder's rights prospectively as it has heretofore done. See the General Laws and Liberties of the Massachusetts Colony (1672 ed.) p. 142; Province Laws of 1698, c. 9; St. 1918, c. 257, §§ 328, 330; G. L. c. 134. For changes in other rights see *Opinion of the Justices,* 337 Mass. 786; *Emblen* v. *Lincoln Land Co.* 184 U. S. 660, 664; *Irving Trust Co.* v. *Day,* 314 U. S. 556, 562. The public interest (point 3, *infra*) makes reasonable the special classification for limitation of finder's rights which the statute establishes. As no property is taken from the societies, there is no occasion for an award as in eminent domain.

3. The statute is a proper exercise of the police power.

The General Court has determined in the preamble of the statute that "[p]roperly conducted scientific experiments on animals are necessary for the welfare of mankind and for the increase of knowledge relating to the causes, nature, prevention, control and cure of diseases of men and animals" and that the "public health and safety require the use of animals in connection with the diagnosis and treatment of human and animal diseases, the advancement of veterinary, dental, medical, biological and related sciences, and the testing, improvement and standardization of biological products, laboratory specimens, pharmaceuticals and drugs."

Institutions within the definition of the statute require, it is stipulated, "substantial quantities of dogs, cats and other animals." While they have been purchased, nevertheless "at times in the past, medical education and research have been hampered or delayed by shortages of needed dogs and cats procurable by purchase." The stipulation indicates

that funds may not be available to procure needed animals by purchase, that there is a belief that, if unlimited prices were offered, illegal trading would be encouraged, and that in any event certain needed dogs would not be assured.

But it is not essential that there be no other sources of experimental animals. The police power extends to preventing waste of resources which can be usefully devoted to the public health and welfare. *Turner* v. *Nye,* 154 Mass. 579, 583. *Otis Co.* v. *Ludlow Mfg. Co.* 186 Mass. 89, 95, mod. 201 U. S. 140. *Dickinson* v. *New England Power Co.* 257 Mass. 108, 112, cert. den. 273 U. S. 748. *Smith* v. *New England Aircraft Co.* 270 Mass. 511, 524-525. *Ohio Oil Co.* v. *Indiana,* 177 U. S. 190, 210–211. *Lindsley* v. *Natural Carbonic Gas Co.* 220 U. S. 61, 77. And see, as to the protection of public health, *Commonwealth* v. *Pear,* 183 Mass. 242, 244, affd. sub nom. *Jacobson* v. *Massachusetts,* 197 U. S. 11; *Lawrence* v. *Board of Registration in Medicine,* 239 Mass. 424, 428; *Loring* v. *Commissioner of Pub. Works,* 264 Mass. 460, 464.

The nub of the issue is the resolution of the conflict between the important general public interest in the use of animals for experiment and the more limited interest of those owners and lovers of animals who believe that the integrity of the life of all sentient beings[1] should be the paramount principle. The determination of the Legislature as to such an issue should and will prevail if it can be sustained on any rational basis. See *Allydonn Realty Corp.* v. *Holyoke Housing Authy.* 304 Mass. 288, 293–294; *Merit Oil Co.* v. *Director of the Div. on the Necessaries of Life,* 319 Mass. 301, 305; *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 138–139; *Court St. Parking Co.* v. *Boston,* 336 Mass. 224, 229; *Paquette* v. *Fall River,* 338 Mass. 368, 376.

Vivisection may be regulated by statute. See G. L. c. 272, § 80C (now amended by § 6 of the statute). But the rights of animals are not constitutionally protected as are the rights of persons.

[1] See Albert Schweitzer, The Evolution of Ethics, The Atlantic, vol. 202, No. 5 (Nov. 1958).

339 Mass. 216                                                229

Mass. Soc. for Prevention of Cruelty to Animals *v.* Comm. of Public Health.

Our appraisal of the public interest is called for only if the legislative determination cannot be deemed reasonable. We think that the present general view of the community as to the public welfare is such that there would be no basis for a ruling that the legislative determination is unreasonable. See *Simpson* v. *Los Angeles,* 40 Cal. 2d 271; *Illinois Anti-Vivisection Soc.* v. *Chicago,* 289 Ill. App. 391, 398–399, leave to appeal denied, 289 Ill. App. xv; *Central Westchester Humane Soc. Inc.* v. *Hilleboe,* 202 Misc. (N. Y.) 881, 884–885; *Regents of the Univ. of Wis.* v. *Dane County Humane Soc.* 260 Wis. 486, 491.

4. There is no constitutional protection of charters or contracts against the valid exercise of the police power. *Opinion of the Justices,* 278 Mass. 607, 611. *Paquette* v. *Fall River,* 338 Mass. 368, 376. *Beer Co.* v. *Massachusetts,* 97 U. S. 25, 33. *Manigault* v. *Springs,* 199 U. S. 473, 480. *East N. Y. Sav. Bank* v. *Hahn,* 326 U. S. 230, 232–233. See *Home Bldg. & Loan Assn.* v. *Blaisdell,* 290 U. S. 398, 435–439. Undoubtedly the statute has greatly restricted the area in which the societies may operate according to their views and those of their donors to rescue and relieve the suffering of homeless animals. But they may not insist that the area remain as it was when they were established or received gifts. To limit the area in which operations of a corporation are feasible or desired is not to change its government or administration. See *Opinion of the Justices,* 237 Mass. 613, 617–618. Compare *Cary Library* v. *Bliss,* 151 Mass. 364, 378; *Adams* v. *Plunkett,* 274 Mass. 453, 462–463. The societies do not contend that they are obliged to act as animal pounds within the definition of the statute.

5. We discern no grant or appropriation of public property under art. 46 of the Amendments to the Constitution.[1] It

---

[1] ". . . no grant, appropriation or use of public money or property or loan of public credit shall be made or authorized by the commonwealth or any political division thereof for the purpose of founding, maintaining or aiding any school or institution of learning, whether under public control or otherwise, wherein any denominational doctrine is inculcated, or any other school, or any college, infirmary, hospital, institution, or educational, charitable or religious undertaking which is not publicly owned and under the exclusive control, order and superintendence of public officers or public agents authorized by the commonwealth or federal authority or both . . . ."

is not necessary to adopt the concept embodied in some of the decisions in other jurisdictions cited above that the State has appropriated property in the animals devoted to experimentation. Our statute allows institutions to requisition abandoned animals from their custodians subject to regulation by an agency of the Commonwealth. There are no forfeiture proceedings. Title has never been taken by the Commonwealth.

We see no grant of public funds to any institution within the description of art. 46. The statute provides that licensees shall pay a fee for requisitioned animals whereas, in the past, the public bore the expense of the destruction of dogs. Should the cost of dog officers increase nevertheless, that increase is an expense attributable to policing the animal population and not to assisting the institutions. The costs of the commissioner in administering the statute are not distinguishable from those arising from his activities in licensing and supervising hospitals for care of the sick. See G. L. c. 111, §§ 70–72. They are costs of regulation. The incidental benefit to private institutions does not affect the character of the State's action.

### CONCLUSION.

On the facts presented, the statute does not impair any rights of the societies or of owners of animals, nor does it call for an unconstitutional expenditure of public funds or property. Decrees are to be entered dismissing the bill in equity and the taxpayers' suit. A judgment is to enter dismissing the petition for a writ of mandamus.

*So ordered.*